1

2                  UNITED STATES DISTRICT COURT

                 NORTHERN DISTRICT OF ILLINOIS

3                     EASTERN DIVISION

4

5   KASANDRA BELLAMY,            )

6               Plaintiff,   )

                          )

7     vs.                 )  Case No. 15 C 2678

                          )

8   THE CITY OF CHICAGO, et al., )  Chicago, Illinois

                          )  June 14, 2016

9           Defendants.  )  8:55 o'clock a.m.

10

11         TRANSCRIPT OF PROCEEDINGS - HEARING

       BEFORE THE HONORABLE JUDGE EDMOND E. CHANG

12

13

14  APPEARANCES:

15

16  For the Plaintiff:    MS. TORREYA L. HAMILTON

                     MR. KEVIN T. TURKCAN

17                  HAMILTON LAW OFFICE, LCC

                     53 West Jackson Boulevard

18                  Chicago, Illinois 60604

                     312-726-3157

19                  tlh@thehamiltonlawoffice.com

                     ktt@thehamiltonlawoffice.com

20

21                  MR. THOMAS P. NEEDHAM

                     LAW OFFICES OF THOMAS P. NEEDHAM

22                  53 West Jackson Boulevard

                     Chicago, Illinois 60604

23                  312-726-3171

                     tpn@needhamlaw.com

24

25

```
 1   For the Defendants:        MS. ARLENE E. MARTIN
                                MR. BRET A. KABACINSKI
 2                              MR. JASON M. MARX
                                CITY OF CHICAGO DEPARTMENT OF LAW
 3                              30 North LaSalle Street
                                Chicago, Illinois 60602
 4                              312-744-6949
                                amartin@cityofchicago.org
 5                              bret.kabacinski@cityofchicago.org
                                jason.marx@cityofchicago.org
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   Court Reporter:           FEDERAL OFFICIAL COURT REPORTER
                                MS. KRISTA BURGESON
24                              219 South Dearborn Street
                                Chicago, Illinois 60604
25                              312-435-5567
                                krista_burgeson@ilnd.uscourts.gov
```

08:55:39  1          THE COURT REPORTER:  All rise.

08:55:40  2          THE COURT:  You may be seated.

08:55:42  3          Do you have anything for the record?

08:55:43  4          MS. HAMILTON:  Yes.

08:55:48  5          THE COURT:  All right.

08:55:48  6          One second then.

08:55:55  7          MS. HAMILTON:  Okay.

          8          Good morning, Your Honor.  Torri Hamilton.

          9          THE COURT:  Yes.

          10          Just one second.  Let me just gear everything up

          11  here.

          12          MS. HAMILTON:  Oh.

          13          THE COURT:  Okay.

08:55:56  14          MS. HAMILTON:  So there is just a few issues.

08:55:57  15          The plaintiff is going to be testifying this morning.

08:55:59  16  So we just wanted to come up and talk to Your Honor about a

08:56:03  17  couple things that we -- occurred to us last night.

08:56:06  18          THE COURT:  Okay.

08:56:06  19          Let's get appearances on the record, too.

08:56:07  20          MS. HAMILTON:  Sure.

08:56:08  21          Torri Hamilton on behalf of plaintiff.

08:56:09  22          MR. TURKCAN:  Good morning, Your Honor.  Kevin

08:56:11  23  Turkcan, T-U-R-K-C-A-N, on behalf of the plaintiff.

08:56:13  24          MR. MARX:  Good morning, Judge.  Jason Marx, Arlene

08:56:15  25  Martin, and Bret Kabacinski on behalf of the defendants.

08:56:20  1          THE COURT:  All right.

08:56:20  2          MS. HAMILTON:  So we emailed the defense counsel

08:56:24  3   about this last night, a couple of things that we wanted to

08:56:25  4   clear up with Your Honor about the motion in limine rulings.

08:56:27  5          The first is about the medical records.

08:56:29  6          So I went back and looked at my notes from the

08:56:31  7   Pre-Trial Conference, and what I recall, and from what my

08:56:35  8   notes indicate from Your Honor's instructions during the

08:56:37  9   Pre-Trial Conference, were that any sort of information in the

08:56:43  10  medical records that were -- that pertained to medical

08:56:49  11  terminology that needed to be explained by a sponsoring

08:56:54  12  witness, but that if we chose not to call a sponsoring

08:56:57  13  witness, that we would have to slice and dice the records to

08:57:01  14  try to put them in in a manner in keeping with the Federal

08:57:06  15  Rules of evidence.

08:57:07  16         So, we have done that.  What we have done is we have

08:57:11  17  actually created -- what we have done is we only have one page

08:57:15  18  of the medical records.  We do still have a doctor on-call,

08:57:20  19  one of the doctors that could lay whatever sort of foundation

08:57:24  20  needs to be laid.  We are trying to avoid having to call the

08:57:28  21  doctor.

08:57:28  22         So we prepared two different versions of essentially

08:57:32  23  the one page of the medical records that we believe should

08:57:35  24  come in.  We have produced those to defense counsel.  In

08:57:40  25  addition to the one page of the medical records that we think

08:57:42  1    we would like to put in, is the actual discharge instructions

08:57:46  2    that were given to the plaintiff when she left.  So she will

08:57:50  3    be able to lay the foundation for this.  This is what was

08:57:53  4    given to her.  This was actually received from her by us, as

08:57:57  5    part of this case.

08:57:59  6            So we wanted to address that with the Court first.

08:58:01  7    So we could figure out exactly what we are going to be able to

08:58:05  8    bring in in keeping with Your Honor's ruling.

08:58:08  9            THE COURT:  Okay.

08:58:08  10           MR. MARX:  Yes, Judge.

08:58:09  11           Plaintiff wants to use the certification of medical

08:58:12  12   records and bills, a certification that we received in

08:58:16  13   response to the subpoena for the medical records.  And that

08:58:19  14   would be fine with us, except that we believe that plaintiff

08:58:22  15   is overinclusive and under inclusive of what she wants to

08:58:25  16   actually present.

08:58:26  17           For example, what I have are the two printed-out

08:58:30  18   versions, what plaintiff proposes, what she sent to us last

08:58:35  19   night, and what Plaintiff's Exhibit 5 was originally submitted

08:58:38  20   to the Court as, and there are a couple of things that I

08:58:42  21   think -- it might be helpful if I hand them to you.

08:58:43  22           THE COURT:  Yes.  All right.

08:58:53  23           MS. HAMILTON:  Judge, I can -- if you want -- I can

08:58:55  24   hand up -- I have two different redacted versions of the first

08:59:00  25   page of the medical records.

08:59:00  **1**          THE COURT:  All right.

08:59:01  **2**          MS. HAMILTON:  And then the discharge instructions.

08:59:01  **3**          THE COURT:  Okay.

08:59:16  **4**          Thanks.

08:59:16  **5**          MR. MARX:  And I think plaintiff just handed you the

08:59:19  **6**  same thing I did, which is called, Plaintiff proposed, I

08:59:22  **7**  think.

08:59:22  **8**          THE COURT:  All right.

08:59:22  **9**          MS. HAMILTON:  I did two separate --

08:59:33  **10**          (Discussion held off the record.)

08:59:33  **11**          THE COURT:  Okay.

08:59:33  **12**          So what is the objection?

08:59:35  **13**          MR. MARX:  Well, first, I am not sure what plaintiff

08:59:40  **14**  has handed --

08:59:41  **15**          MS. HAMILTON:  Here, here, here.

08:59:42  **16**          So these are the discharge instruction.  These are

08:59:44  **17**  the two different versions that the Judge has, plus the

08:59:47  **18**  discharge instructions.

08:59:48  **19**          MR. MARX:  Okay.

08:59:48  **20**          MS. HAMILTON:  Okay.

08:59:50  **21**          MR. MARX:  On the first page, on Page 40, I am not

08:59:53  **22**  sure why plaintiff redacted the top.  It says, Radiology

08:59:56  **23**  reports reviewed.  No bony injury.  Suspect diffused

09:00:02  **24**  contusions with concussion.

09:00:03  **25**          I mean, I am not sure why that would be redacted.  I

09:00:07 1 don't think there is any ruling that would say that should be
09:00:09 2 redacted.
09:00:10 3      MS. HAMILTON:  I am fine with leaving that in.  I
09:00:12 4 just thought that that would be in keeping with Your Honor's
09:00:16 5 ruling if we didn't call -- have to call a doctor.
09:00:17 6      MR. MARX:  As far as I am concerned, the whole first
09:00:20 7 page should come in.  I don't know why it wouldn't.
09:00:25 8      THE COURT:  All right.
09:00:25 9      Do you have a problem for the plaintiff with the
09:00:27 10 entirety of the first page coming in?
09:00:29 11      MS. HAMILTON:  No.
09:00:29 12      THE COURT:  Okay.
09:00:30 13      MS. HAMILTON:  I just was trying to comply with Your
09:00:33 14 Honor's ruling during the Pre-Trial Conference.
09:00:35 15      We are fine with the whole first page coming in.
09:00:38 16      THE COURT:  Yes.
09:00:38 17      I mean, my ruling, obviously, was based on a defense
09:00:43 18 objection, and so my -- what I was telling you is that if you
09:00:47 19 don't have a sponsoring witness, the defense could
09:00:50 20 legitimately object that the, you know, medical terminology in
09:00:54 21 there shouldn't go to the jury.  But if they have no objection
09:00:57 22 to it, then I also have no objection.
09:00:59 23      All right.  So the entirety of the first page, and
09:01:02 24 this is the only page then?
09:01:03 25      MS. HAMILTON:  That is the only page.

09:01:04  1        THE COURT:  Okay.

09:01:05  2        MS. HAMILTON:  In looking through it, the rest of

09:01:07  3   it -- the reason I chose this page is because it has, you

09:01:09  4   know, obviously, the recorded statement of the plaintiff, so I

09:01:13  5   figured that would come in, regardless of an objection.  And

09:01:19  6   then the rest of it, the rest of the records, I think do need

09:01:22  7   a sponsoring witness to put in to explain them.

09:01:26  8        So we only are offering the first page.

09:01:28  9        THE COURT:  Okay.

09:01:29  10       So what does the defense want to do with the rest of

09:01:32  11  the record, if anything?

09:01:33  12       MR. MARX:  We believe Plaintiff's Exhibit 41 and 42

09:01:36  13  should also come in, plaintiff omits them.  It's her Bates

09:01:43  14  stamp, it's HL041 and 42.  And we see no reason why that

09:01:48  15  shouldn't be included.  In fact, you know, this is just as

09:01:51  16  pertinent as the first page.  It's the physical exam of the

09:01:54  17  plaintiff.

09:02:02  18       THE COURT:  Wait.

09:02:03  19       The Plaintiff's 41 and 42 --

09:02:03  20       Or are you talking about the Bates stamp?

09:02:04  21       MR. MARX:  Not the Bates stamp, I apologize.

09:02:06  22       THE COURT:  Okay.

09:02:07  23       Do you have any objection to 41 and 42?

09:02:08  24       MS. HAMILTON:  So, Your Honor, these were objected to

09:02:10  25  by the defense counsel during the Pre-Trial Conference.  So I

9

09:02:13    1    was operating under the assumption that I needed to go through

09:02:17    2    it, and figure out what I could offer, despite their objection

09:02:17    3    and keeping with Your Honor's orders.  I would have to go,

09:02:26    4    now, and look.  And I -- that is why we sent the email last

09:02:28    5    night to see if we could figure any of these issues out before

09:02:30    6    we had to bring it before Your Honor.

09:02:30    7                 THE COURT:  All right.

09:02:33    8                 MS. HAMILTON:  So maybe we can talk about it amongst

09:02:35    9    ourselves.  And I can look at it, and we can see what we can

09:02:37    10   work out without having to involve Your Honor.

09:02:39    11                 THE COURT:  Okay, okay.  That is good.

09:02:42    12                 The other thing is that, you know, right now --

09:02:44    13   unless there is a incompleteness problem with it, with just

09:02:59    14   having the first page, then it would be up to the defense to

09:03:01    15   offer the other pages.  And then I would want to know exactly

09:03:03    16   what you are offering it for, like what is the relevancy

09:03:06    17   purpose from the defense perspective.

09:03:09    18                 All right.  So the first page can come in.  And then

09:03:11    19   see if you can work out the remaining pages, and if you can't,

09:03:14    20   then I will want to hear from the defense what the particular

09:03:17    21   relevancy is to the remaining pages.

09:03:19    22                 MS. HAMILTON:  Okay.  Okay.

09:03:19    23                 THE COURT:  Okay.

09:03:22    24                 MS. HAMILTON:  The second issue, Your Honor, I wanted

09:03:24    25   to bring up, relates to our conversation on the record, and

09:03:29  1  Your Honor's ruling with regard to the arrest report on the

09:03:33  2  7th page of the arrest report, and --

09:03:34  3          THE COURT:  Okay.  I'm sorry.  The discharge

09:03:35  4  instruction.

09:03:36  5          Do you want to take care of that?

09:03:38  6          MS. HAMILTON:  Oh, I'm sorry.  Yes.

09:03:40  7          THE COURT:  So is this a new exhibit?  What is this?

09:03:43  8          MS. HAMILTON:  No.

09:03:44  9          THE COURT:  Okay.  So is there any objection to the

09:03:45  10 discharge instruction?

09:03:46  11          MR. MARX:  What page is this?

09:03:51  12          MS. MARTIN:  Yes.  The defendants do have an

09:03:53  13 objection to all of that discharge record coming in.

09:04:00  14          And looking at the plaintiff's Bates stamp at the

09:04:03  15 bottom, HL061; it talks about cultures being taken, whether

09:04:10  16 you are a victim of abuse, hand washing, seat belts, Illinois

09:04:15  17 tobacco outline.

09:04:16  18          There is no relevance there.  And the only thing that

09:04:20  19 defendants can think of as to why the plaintiffs would want to

09:04:23  20 have this included is because if you are a victim of abuse,

09:04:26  21 but that is really more of a -- domestic type of abuse, and

09:04:31  22 I --

09:04:32  23          We are concerned that the jury would think that that

09:04:36  24 was related to the abuse that she claims happened here.

09:04:36  25          THE COURT:  Okay.

09:04:41   1            So this is one integrated document that the plaintiff
09:04:44   2   got?
09:04:45   3            MS. HAMILTON:  Yes, this is -- these are -- this is
09:04:47   4   the document that was given to the plaintiff when she was
09:04:50   5   discharged from the hospital.
09:04:52   6            THE COURT:  Okay.
09:04:53   7            Then if that is the only defense concern, there is no
09:04:56   8   need to redact that out.  There is just no danger that is
09:04:59   9   going to happen here.
09:05:00  10            MS. MARTIN:  Okay.
09:05:01  11            Then just one more objection, Your Honor, for the
09:05:03  12   record.
09:05:04  13            THE COURT:  Oh, all right.
09:05:05  14            MS. MARTIN:  The same would hold true for the Bates
09:05:08  15   stamp of Plaintiff's 63 and 64 as it relates to her chart
09:05:13  16   activation instructions.
09:05:17  17            THE COURT:  And what is the concern there?
09:05:19  18            MS. MARTIN:  Relevance.  There is no reason to have
09:05:21  19   that go into evidence and go back to the jury.
09:05:24  20            THE COURT:  Okay.
09:05:25  21            I mean, if it is one integrated document, then there
09:05:28  22   is no need to redact that out either.
09:05:35  23            All right.  The OEMC issue?
09:05:38  24            MS. HAMILTON:  Yes.  I was going to do that last.  I
09:05:40  25   was going to talk to you about the arrest report first, if

09:05:43   1   Your Honor doesn't mind.

09:05:44   2          THE COURT:  Oh, okay.

09:05:44   3          MS. HAMILTON:  That is okay.

09:05:45   4          So yesterday we brought to Your Honor the redaction

09:05:47   5   issue on the 7th page of the arrest report.  And Your Honor

09:05:50   6   made a ruling.  I understand Your Honor's ruling, but in

09:05:54   7   thinking about it last night, and looking at Your Honor's

09:05:57   8   other motions in limine rulings, I had some concerns.  And I

09:06:01   9   wanted to bring it to Your Honor's attention.

09:06:04   10          I believe that by putting that portion of the arrest

09:06:08   11   report in, in which it says, Arrestee states, no medical

09:06:12   12   attention needed at this time, that will open the door to --

09:06:17   13   and it will be -- it will allow us to then contradict that,

09:06:22   14   which would then be in violation of Your Honor's motion in

09:06:27   15   limine ruling on Rule Number 17.

09:06:29   16          So the defense asks Your Honor to bar the plaintiff

09:06:32   17   from being able to complain about the fact that she had asked

09:06:35   18   for medical attention from the police officers that arrested

09:06:38   19   her, and most of the police officers that she had contact

09:06:42   20   with; and she wasn't given medical attention, and they sought

09:06:45   21   to bar that based on the fact that plaintiff didn't have a

09:06:48   22   denial of medical care claim.

09:06:50   23          I believe that if they put the arrest report in the

09:06:53   24   way that they wanted to yesterday, that that would open the

09:06:56   25   door to us being able to rebut that.

| | |
|---|---|
| 09:06:59 | 1 |
| 09:07:00 | 2 |
| 09:07:05 | 3 |
| 09:07:08 | 4 |
| 09:07:12 | 5 |
| 09:07:17 | 6 |
| 09:07:18 | 7 |
| 09:07:19 | 8 |
| 09:07:22 | 9 |
| 09:07:23 | 10 |
| 09:07:26 | 11 |
| 09:07:31 | 12 |
| 09:07:35 | 13 |
| 09:07:39 | 14 |
| 09:07:42 | 15 |
| 09:07:43 | 16 |
| 09:07:45 | 17 |
| 09:07:46 | 18 |
| 09:07:48 | 19 |
| 09:07:52 | 20 |
| 09:07:56 | 21 |
| 09:07:59 | 22 |
| 09:08:00 | 23 |
| 09:08:04 | 24 |
| 09:08:08 | 25 |

THE COURT:  Right.

So what you want to do is factually, not legally, but factually rebut the statement that she did not need medical attention, but you understand that there is still no basis to have damages based on a denial of medical care?

MS. HAMILTON:  Of course.

THE COURT:  All right.

And if we have to fix an instruction or add something, we can do that, too.

So, as a factual matter, do you concede that if you put in the lock up record keeper statement that she said, no medical attention was needed, that the plaintiff is factually allowed to get up there and say, I did ask for medical attention?

MR. MARX:  Yes, that is fine.

THE COURT:  Yes.  All right.  Okay.

Anything else?

MS. HAMILTON:  And just for the record, we have both versions of the arrest report already redacted, the way we had it yesterday, and in keeping with Your Honor's rulings yesterday.  In case there was a change, we have them both with us today.

The third thing, Your Honor, is the OEMC records issues.  And we don't want to beat a dead horse.  And we fully understand Your Honor's rulings.  However, there is a

09:08:12  1   possibility that Ms. Materak is going to have to testify
09:08:16  2   during this trial.
09:08:18  3            And so we do need to bring up a couple of issues
09:08:21  4   regarding -- what has happened since Your Honor made his
09:08:24  5   ruling on Friday and Mr. Turkcan is actually the most familiar
09:08:28  6   with the documents and what was produced and what they show.
09:08:32  7   So I was going to ask him to come up and explain it to Your
09:08:35  8   Honor, if that is okay.
09:08:36  9            THE COURT:  All right.
09:08:36  10           MR. TURKCAN:  Good morning, Your Honor.
09:08:38  11           THE COURT:  Good morning.
09:08:39  12           MR. TURKCAN:  As Your Honor probably recalls, when we
09:08:41  13  were in court on Friday, the Court ordered defense counsel to
09:08:44  14  produce screenshots of basically how OEMC researchers were
09:08:49  15  looking for the audio files related to our incident.  And what
09:08:54  16  we received on Friday afternoon was a series of nine screen
09:08:58  17  shots -- or 11, I think, total.  Really what is important is
09:09:02  18  two of them.  And basically what they show, as far as I can
09:09:07  19  tell Your Honor, is there is an OEMC researcher who is
09:09:11  20  searching through a file directory in a storage drive, which I
09:09:15  21  would call the O Drive, that is the letter that it is
09:09:17  22  designated as.
09:09:19  23           And what it shows is this OEMC researcher drilling
09:09:23  24  down through this file directory.  They pick -- there is a
09:09:27  25  folder for the year 2014, then they pick a folder for July

09:09:32  1    2014, then they pick a folder for July 4th, 2014.

09:09:35  2              And then within that folder for July 4th, 2014, are a

09:09:39  3    series of sub folders that are organized and named, mostly by

09:09:45  4    RD numbers, records division numbers.

09:09:49  5              There is one folder there that is named by an

09:09:52  6    address, but the vast majority are named by RD numbers.

09:09:55  7              And there is one RD number in the July 4th, 2014, sub

09:10:00  8    folder that is the RD number for our arrest; it's HX 331467.

09:10:08  9    And I can actually provide copies of these screen shots to

09:10:13  10   Your Honor if you would like to see them.

09:10:14  11             THE COURT:  All right.

09:10:14  12             Let me ask before we go further because we are now at

09:10:18  13   9:10, I will take the document.

09:10:23  14             Can we save this for a lunch break so that I don't

09:10:26  15   have the jury waiting here?

09:10:28  16             MS. HAMILTON:  We absolutely could.

09:10:28  17             THE COURT:  Okay.

09:10:29  18             MS. HAMILTON:  We asked Friday and then we asked this

09:10:31  19   morning for them to produce a screen shot of what is in the

09:10:34  20   folder with our RD number.  Because it might take a little

09:10:37  21   time for them to obtain that from OEMC, that is the only

09:10:40  22   reason we are bringing it up now.

09:10:42  23             THE COURT:  Okay.

09:10:43  24             Is that the RD number?

09:10:45  25             MS. MARTIN:  That is the RD number.  We can maybe

09:10:48  1   make this really short.

09:10:49  2            I want to make an objection for the record.

09:10:52  3            I talked with Mr. Turkcan last Friday.  I told him

09:10:56  4   that it was requested, and at the time it was requested, these

09:10:59  5   people had already gone home for the weekend.  If he wanted me

09:11:02  6   to pull them back in over the weekend to do this, I said it is

09:11:06  7   not going to happen.

09:11:07  8            I expected to have the screen shots yesterday.  When

09:11:10  9   I came to the office, they weren't there.  I sent another

09:11:14  10  email asking them for it and it came.

09:11:16  11           However, the objection also goes to, this is

09:11:19  12  discovery that they are conducting, that they should have

09:11:21  13  conducted during the term of discovery when it was open.  And

09:11:25  14  plaintiff's counsel was retained by the plaintiff within the

09:11:29  15  30-day time period for her to put in a preservation order for

09:11:33  16  these audio recordings, and she worked with our office before

09:11:38  17  she went out on her own.  Before that she was an Assistant

09:11:43  18  State's Attorney.  She knows how the system works.

09:11:45  19           So I objected to Kevin, Mr. Turkcan, last Friday,

09:11:49  20  saying, you are conducting discovery right now.  My concern

09:11:53  21  is, we keep going on and on and on, because they want to keep

09:11:56  22  looking at all of these folders.  I think it is too late for

09:11:59  23  them.

09:12:00  24           With that said, Judge, and I did want that on the

09:12:02  25  record, we do object to tendering them.

09:12:04  1          I do have a copy of that.

09:12:06  2          THE COURT:  Okay.

09:12:17  3          Was there a discovery request for what is in that

09:12:22  4  folder?

09:12:23  5          MS. MARTIN:  The discovery request, as I understand

09:12:27  6  it, was that it was for all audio recording.

09:12:32  7          However, the discovery request was made after the

09:12:34  8  retention period.

09:12:35  9          THE COURT:  Right.

09:12:36  10         Okay.  So are you saying --

09:12:39  11         MS. MARTIN:  Before --

09:12:40  12         THE COURT:  (Continuing) -- the folder with this RD

09:12:43  13  number for this case, is empty?

09:12:47  14         MS. MARTIN:  Yes.  That is how I am reading it.

09:12:50  15         THE COURT:  Okay.

09:12:52  16         MR. TURKCAN:  Judge, if I may bring something to Your

09:12:55  17  Honor's attention.

09:12:55  18         The folder with our RD number on it, HX 331467, if

09:13:07  19  you look into the column to the right there, that says, Date

09:13:09  20  modified, it was modified on Friday, June 10th, 2016, at 12:51

09:13:17  21  p.m., so after we were here in court.  And that is the primary

09:13:21  22  reason why we would like to see what is in the contents of

09:13:25  23  that folder.

09:13:26  24         THE COURT:  Okay.

09:13:27  25         Are there actual files in the folder or not?

09:13:31    1        MS. MARTIN:  There are files in the folder.

09:13:31    2        THE COURT:  Okay.

09:13:35    3        And are you saying those are not audio recordings?

09:13:39    4        MS. MARTIN:  It shows --

09:13:41    5        Go ahead.

09:13:42    6        MR. KABACINSKI:  Your Honor, it appears to me that

09:13:44    7 they are the audio recordings that were previously produced to

09:13:47    8 plaintiff on, I believe, May 31st, labeled A through M that

09:13:51    9 were on the audio research log that was tendered to Your Honor

09:13:55   10 when we were in court last Friday.

09:13:57   11        MS. MARTIN:  All right.

09:13:57   12        MR. KABACINSKI:  It doesn't appear that there are any

09:14:00   13 other recordings.  And it appears that the reason that the

09:14:05   14 folder was modified on June 10th, the file that was modified

09:14:10   15 on June 10th, was the audio research log that was tendered to

09:14:14   16 Your Honor, the revised copy that plaintiffs got on June 10th,

09:14:17   17 when we were in court.

09:14:18   18        So it appears that that is the reason that the folder

09:14:21   19 would have that date and time of last modified.

09:14:27   20        THE COURT:  Okay.

09:14:27   21        Do you know whether or not -- after the 30-day

09:14:32   22 period -- there was a folder labeled, HX 331467, that was

09:14:41   23 sitting on the server?

09:14:42   24        MS. MARTIN:  I would have to assume that it was,

09:14:45   25 Judge, because it is there right now.

| | |
|---|---|
| 09:14:47 | 1 |
| 09:14:47 | 2 |
| 09:14:50 | 3 |
| 09:14:54 | 4 |
| 09:14:59 | 5 |
| 09:15:02 | 6 |
| 09:15:06 | 7 |
| 09:15:10 | 8 |
| 09:15:15 | 9 |
| 09:15:22 | 10 |
| 09:15:24 | 11 |
| 09:15:28 | 12 |
| 09:15:32 | 13 |
| 09:15:38 | 14 |
| 09:15:44 | 15 |
| 09:15:46 | 16 |
| 09:15:49 | 17 |
| 09:15:55 | 18 |
| 09:15:59 | 19 |
| 09:16:04 | 20 |
| 09:16:06 | 21 |
| 09:16:09 | 22 |
| 09:16:14 | 23 |
| 09:16:20 | 24 |
| 09:16:24 | 25 |

THE COURT:  Okay.

Well, yes.  That doesn't -- it may be that they created it when they did the audio research log.

Anyway, the point being that it would -- if, indeed, there was a folder, but it was empty at the time, and only recently have they saved the audio research log, and the audio recordings that they found from the other incidents, it would have been a much better thing to do to produce the file directory or inform the plaintiff that there is a folder with this RD number, but it is empty.  All right.  And then you wouldn't have this specter of suspicion at this point that, number one, it was there and had all sorts of recordings that were generated and put in there before May 31, all right, and then you wouldn't have the additional specter of suspicion that it was modified on June 10.

So it sounds like they are perfectly reasonable explanations to explain what is going on here.  But I don't think this is a request that is, you know, so untimely that I would not otherwise require a disclosure, especially if there was a folder there.

But maybe there wasn't, just looking at the other date, it modifies -- it may be that this folder was created for the first time based on the follow-up request.  So there may be a lot of -- I don't even know if there is smoke here, but that it is just for nothing.

09:16:25　1　　　　　　Okay.  So you should turn over your directory of

09:16:29　2　files that is in there right now so they can look at it.  And

09:16:34　3　then you should be willing to continue to confer with OEMC to

09:16:41　4　answer their questions, because as I said, this could have

09:16:45　5　been, you know, headed off in other ways, including just

09:16:48　6　talking to one another; and if Ms. Materak is going to

09:16:52　7　testify, you would want to investigate this anyway.

09:16:55　8　　　　　　All right.  Anything else before we get the jury?

09:17:04　9　　　　　　MS. MARTIN:  No, there is not, for the defense.

09:17:06　10　　　　　　MS. HAMILTON:  No, Your Honor.  Not for the

09:17:07　11　plaintiff.

09:17:07　12　　　　　　THE COURT:  All right.

09:17:08　13　　　　　　So who is going to testify first today then?

09:17:10　14　　　　　　MS. HAMILTON:  The plaintiff.

09:17:10　15　　　　　　THE COURT:  Okay.

09:17:11　16　　　　　　MS. HAMILTON:  And I just want to remind Your Honor,

09:17:13　17　we probably need to tell the jury why Ms. Love is not --

09:17:17　18　　　　　　THE COURT:  Yes, right.

09:17:19　19　　　　　　And Ms. Love, she is scheduled for 2:00?

09:17:22　20　　　　　　MS. HAMILTON:  Yes.

09:17:22　21　　　　　　THE COURT:  All right.

09:17:23　22　　　　　　And then what about Ms. Kerr?

09:17:25　23　　　　　　MS. HAMILTON:  She is scheduled for 3:00.  I asked

09:17:27　24　her -- as Your Honor asked me to do -- to get here earlier,

09:17:30　25　she is going to try.  If we have Ms. Love on the stand at

09:17:33  1    2:00, I am not sure when we will get to her anyway, but she is
09:17:37  2    going to try.
09:17:38  3               THE COURT:  All right.
09:17:39  4               Does anyone's computer need to be tested out?
09:17:43  5               MR. TURKCAN:  Ours does, Your Honor.
09:17:43  6               THE COURT:  All right.
09:17:45  7               MR. TURKCAN:  We are going to be using it today.
09:17:47  8               THE COURT:  Is it at the table right now?
09:17:49  9               MR. TURKCAN:  Yes, sir.
09:20:00  10              THE COURT:  Okay.
09:20:01  11              THE COURTROOM DEPUTY:  Judge, can I get the jury?
09:20:05  12              THE COURT:  Yes.
09:20:06  13              THE COURTROOM DEPUTY:  All right.
          14              THE COURT:  Thank you.
          15              (Proceedings concluded.)
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25

1                          C E R T I F I C A T E

2

3

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     /s/Krista Burgeson, CSR, RMR, CRR      August 6, 2016
      Federal Official Court Reporter       Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25