| | | |
|---|---|---|
| KASANDRA BELLAMY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 02678 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| THE CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kasandra Bellamy filed this civil rights lawsuit against Chicago Police Officer Hillel Watkins and Chicago Police Detective Maria Viti, among others.[1] *See* R. 69, First Am. Compl.[2] On June 17, 2016, after a four-day trial, a jury returned a verdict for Bellamy on a claim of excessive force against Watkins, but against Bellamy on a false arrest claim and a malicious prosecution claim. R. 134, 06/17/16 Minute Entry. Bellamy now moves under Federal Rule of Civil Procedure 54(d) for reasonable attorneys' fees and costs as permitted by 42 U.S.C. § 1988 and 28 U.S.C. § 1920. R. 157, Pl.'s Fee Pet. For the reasons stated below, Bellamy's motion for attorneys' fees and costs is granted in part and denied in part.

## I. Background

Only a brief summary of the litigation is necessary for purposes of this Opinion. On July 4, 2014, Bellamy was injured by Watkins—an off-duty Chicago

---

[1]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331.

[2]Citations to the record are noted as "R." followed by the docket number and, when necessary, the page or paragraph number.

police officer—when he used physical force to remove her from the men's public restroom at the 31st Street Beach on the South Side of Chicago. Pl.'s Fee Pet. at 1. Shortly after being evicted from the restroom, Bellamy was arrested by on-duty Chicago police officers and charged with battering Watkins. *Id.* That battery charge, however, was eventually dismissed, *id.*, and Bellamy filed this lawsuit, alleging that Watkins had used excessive force against her and caused her to be falsely arrested, as well as that Watkins and Viti—a Chicago police detective—caused Bellamy to be maliciously prosecuted for battery.[3] R. 125, 06/12/16 Minute Entry (revised case statement). Following 16 months of litigation and a four-day trial, a jury returned a verdict for Bellamy on her excessive force claim against Watkins.[4] 06/17/16 Minute Entry. The jury awarded Bellamy $9,000.00 in compensatory damages and $8,000.00 in punitive damages. *Id.*

Bellamy has since filed a bill of costs and a motion for attorneys' fees under Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920, and 42 U.S.C. § 1988. Pl.'s Fee Pet. Bellamy seeks $297,948.00 in attorneys' fees and $8,461.75 in taxable

---

[3]The First Amended Complaint asserted claims against five additional defendants: three Chicago police officers, Isaac Benson, Bernard Wysinger, and Margit Willis; the City of Chicago; and Haywil, LLC. First Am. Compl. In July 2015, the Court entered an order of default against Haywil for failing to answer or otherwise plead on time. R. 35, 07/01/15 Minute Entry. Benson, Wysinger, and Willis were voluntarily dismissed from the case in February 2016. R. 75, Mot. to Voluntarily Dismiss; R. 80, Supp. to Mot. to Voluntarily Dismiss; R. 81, 02/17/16 Minute Entry. The City of Chicago remained in the case for indemnification purposes only, and agreed to the automatic entry of judgment against it for compensatory damages and reasonable attorneys' fees if Watkins or Viti were found liable. R. 105, 05/24/16 Order at 2.

[4]The jury returned a verdict for Watkins on Bellamy's false arrest claim and for Watkins and Viti on Bellamy's malicious prosecution claim. 06/17/16 Minute Entry. The Court then entered judgment against the City of Chicago on the excessive force claim (for compensatory damages) and for the City of Chicago on the false arrest and malicious prosecution claims. *Id.*

costs. *Id.*; R. 140, Bill of Costs. Defendants City of Chicago, Watkins, and Viti, in turn, have objected to the attorneys' fees that Bellamy seeks. R. 176, Defs.' Resp.

## II. Legal Standard

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party [in a § 1983 action] … a reasonable attorney's fee as part of the costs." In determining a reasonable attorney's fee, district courts use the lodestar method, "multiplying the 'number of hours reasonably expended on the litigation … by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (*Pickett II*) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Court may then adjust that figure based on the factors set forth in *Hensley v. Eckerhart*, such as the time and labor required, the novelty or difficulty of the case, the degree of the success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether appropriate billing judgment was used. 461 U.S. at 429-30 & n.3. The party requesting the fee has the burden of proving its reasonableness, including the hourly rate and appropriate hours expended. *Id.* at 437; *see also, e.g.*, *Benito M. v. Bd. of Educ. of Chi., Dist. 299*, 544 F. Supp. 2d 713, 720 (N.D. Ill. 2008).

Federal Rule of Civil Procedure 54(d)(1) further allows a prevailing party to recover costs other than attorneys' fees unless a federal statute, federal rule, or court order says otherwise. Under 28 U.S.C. § 1920, a federal court may tax as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for

printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

"Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). "[D]istrict courts enjoy wide discretion in determining and awarding reasonable costs," *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991), but "[t]here is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate," *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). That said, if the prevailing party does not adequately provide an itemization or documentation for certain costs, such costs may be denied. *See Montanez v. Simon*, 755 F.3d 547, 559 (7th Cir. 2014).

### III. Analysis

In this case, Bellamy seeks to recover $297,948.00 in attorneys' fees and $8,461.75 in taxable costs.[5] Pl.'s Fee Pet.; Bill of Costs. On attorneys' fees,

---

[5]These fees and costs represent Bellamy's attorneys' work through the date that the fee petition was filed, October 18, 2016. Pl.'s Fee Pet. at 1 n.1. Bellamy says that she also will seek recovery of fees and costs incurred after that date. *See id.* Bellamy should abide by Local Rule 54.3 and confer with the defense. The parties should attempt in good faith to agree upon the fees and expenses that should be awarded. *See* L.R. 54.3(d). If the parties are unable to reach an agreement, Bellamy may then file a motion for additional fees and

Defendants object to both the hourly rates charged *and* the number of hours billed by Bellamy's five attorneys: Torreya Hamilton, Thomas Needham, Elizabeth Uribe, Kevin Turkcan, and Anna Szymczak. Defs.' Resp. at 1-2. Defendants also ask that the overall lodestar amount be cut by 50% to account for, among other things, Bellamy's limited degree of success at trial. *Id.* at 2. The Court addresses each of Defendants' objections, and their request for a 50% reduction, in turn. And, though Defendants did not file an objection to Bellamy's bill of costs, the Court may independently scrutinize its legitimacy, *cf. Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995), so this Opinion deals with taxable costs as well.

## A. Hourly Rate

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez*, 755 F.3d at 553.

> The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases.

*Id.* As between the two "next-best" alternatives, the Seventh Circuit has "indicated a preference for third party affidavits that attest to the billing rates of comparable attorneys." *Pickett II*, 664 F.3d at 640. That said, "conclusory affidavits from attorneys 'merely opin[ing]' on the reasonableness of another attorney's fee—unlike affidavits describing what 'comparable attorneys charge for similar services'—have little probative value." *Montanez*, 755 F.3d at 554 (quoting *Pickett II*, 664 F.3d at 647).

costs. Any new motion should include an estimate for *all* future attorneys' fees and costs so as to avoid needlessly prolonging this litigation.

The party seeking the fee award bears the burden of establishing the market rate for their attorneys' services. *Id.* at 553. If the party fails to carry that burden, then the Court can independently determine the appropriate hourly rate. *Id.* If the party seeking the award has met their burden, however, it falls on the opposing party to demonstrate why a lower rate should be awarded. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996). "A defendant's failure to do so is essentially a concession that the attorney's billing rate is reasonable and should be awarded." *Id.* That said, if the Court "decides that [a] proffered rate overstates the value of an attorney's services, it may lower [the rate] accordingly." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003); *see Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767 (7th Cir. 1982) ("A judge may well approach high rates with skepticism, and he may exercise some discretion in lowering such rates.").

### 1. Torreya Hamilton

Bellamy asks the Court to award Hamilton a billing rate of $465 per hour for the work that she did on this matter. Pl.'s Fee Pet. at 7-10. Bellamy, however, has failed to meet her burden of proof. Bellamy supplied neither "best" evidence showing that Hamilton has ever billed at or near a rate of $465 for other similar work, or the preferred "next best" third-party affidavits averring to the rates charged by similarly experienced attorneys in the community. She did provide evidence of rates set for Hamilton in other civil rights cases, but in none of those cases was Hamilton awarded $465 an hour. *See, e.g., Volland-Golden v. City of*

*Chicago*, 2015 WL 12839131, at *3 (N.D. Ill. Aug. 27, 2015) (setting rate at $450/hour in August 2015 for work performed after August 1, 2013); *Baker v. Ghidotti*, 2015 WL 1888004, at *4 (N.D. Ill Apr. 24, 2015) (setting rate of $450/hour in April 2015), *aff'd in part, vacated in part on other grounds sub nom. Baker v. Lindgren*, 856 F.3d 498 (7th Cir. 2017); *Morjal v. City of Chicago*, 2013 WL 2368062, at *5-6 (N.D. Ill. May 29, 2013) (setting rate of $400/hour in 2013); *Richardson v. City of Chicago*, 2012 WL 6185867, at *11 (N.D. Ill. Nov. 20, 2012) (setting rate of $425/hour in 2012), *sustained in pertinent part*, 2013 WL 2451107 (N.D. Ill. June 5, 2013); Minute Entry, *Nelson v. Salgado*, 09-CV-05357 (N.D. Ill. Oct. 19, 2012), ECF 138 (setting rate of $395/hour in 2012); *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 985 (N.D. Ill. 2012) (setting rate of $395/hour in 2012); *cf., e.g.*, Local Rule 54.3(e) Joint Statement at 1-2, *Morado v. City of Chicago*, 12-CV-00752 (N.D. Ill. Oct. 30, 2013), ECF 245 (City of Chicago agreeing to rate of $425/hour in October 2013). Indeed, the highest billing rate that Hamilton has been awarded to date is $450 an hour. *See Volland-Golden*, 2015 WL 12839131, at *3; *Baker*, 2015 WL 1888004, at *4. And though courts in this District have generally increased Hamilton's billing rate over time, they have not done so consistently: Hamilton received $395 *and* $425 an hour in 2012; then $400 in 2013; and finally $450 in 2015. Even acknowledging the overall upward trend, it is not a given that courts should just continue that trend—at some point, an experienced lawyer will max out her billing rate. That said, a $15 raise from the $450 an hour awarded in 2015 for a lawyer with more than 20 years of litigation experience, and 14 years

working on civil rights cases, *see* R. 157-2, Hamilton Dec. ¶¶ 1, 4-6, is not unreasonable.[6] So, the Court awards Hamilton a billing rate of $465 an hour, though she might be quickly approaching a fee ceiling (if she has not reached it already).

## 2. Thomas Needham

Bellamy also asks the Court to award Needham $465 an hour. Pl.'s Fee Pet. at 7-8. In order to establish the market rate for Needham's services—and in contrast to what she did for Hamilton—Bellamy has supplied declarations from four experienced attorneys in practice in the Chicago legal community: Richard Devine, Christopher Hurley, Daniel Kelley, and Scott Turow. *See* R. 157-1, Devine Dec.; R. 157-1, Hurley Dec.; R. 157-1, Kelley Dec.; R. 157-1, Turow Dec. These declarations, however, have little to no probative value. As an initial matter, they are not in the proper format. A declaration under penalty of perjury must be signed and bear the date that it was executed by the declarant. 28 U.S.C. § 1746. Here, all four declarations are undated and use e-signatures. *See Grayer v. Cerda*, 2014 WL 6713480, at *10 (N.D. Ill. Oct. 6, 2014) (holding that declarations accompanying a

---

[6]In lieu of prejudgment interest, Bellamy asks the Court to award the current market billing rate to each of her attorneys for the entirety of their representation. *See* Pl.'s Fee Pet. at 7 n.3. "Since payment for services in civil rights litigation often comes by court order years after the services were performed, the court must account for the delay in payment of attorney's fees." *Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016) (*Pickett III*). A district court can compensate for delay in payment by (1) calculating a fee award using the lawyer's current billing rate for the entire period of representation *or* (2) by calculating a fee award using the lawyer's rate(s) at the time(s) the lawyer represented the client and adding interest to that amount. *Id.* The Court thinks it appropriate here—where Bellamy has proposed the use of current market rates, and the Defendants have offered no objection—to calculate the fee award using the attorneys' current market rates.

fee petition were "questionable as evidence" because they were undated and used e-signatures). The lack of date, in particular, is problematic: without a date of execution, the Court cannot tell when the declarations were made, which significantly diminishes their value as evidence of current market rate.

Bellamy tries to fix this problem in her reply brief by explaining that the declarations were created to support a fee petition submitted in a different case (*Morado v. City of Chicago*) in 2013. *See* R. 183, Pl.'s Reply at 18. Even assuming that Bellamy could fix a defect in a declaration by supplying missing information in a reply brief, the Court would have a problem with what Bellamy did here. As a general matter, it is fine for a party seeking attorneys' fees to reuse declarations that were created for fee petitions in other cases. But a party who chooses to recycle a declaration must be upfront about having done that. The need for transparency is especially clear in this case, where the declarations are undated and suggest that Needham should receive a different rate ($525 per hour) than the one that Bellamy is asking for.[7] *See* Devine Dec.; Hurley Dec.; Kelley Dec.; Turow Dec.

Setting aside the defects in format and the lack of transparency, the substance of the declarations is too general and conclusory. Starting with the Devine and Kelley Declarations: those two state in a conclusory fashion that the rate that Needham seeks is reasonable, *see* Devine Dec. ¶ 8; Kelley Dec. ¶ 10, but they do not substantiate this opinion with any information—such as experience

---

[7]Not to mention the fact that the Kelley Declaration says that Kelley "ha[s] reviewed the declaration that Mr. Needham is submitting to this Court," *see* Kelley Dec. ¶ 10, which was no doubt true of Needham's declaration in *Morado v. City of Chicago*, but is likely false with respect to Needham's declaration in this case.

litigating civil rights cases or hourly rates charged for similar work—that would make their opinion on the matter particularly helpful. Hurley, unlike Devine and Kelly, at least provides his billing rate ($550 per hour), *see* Hurley Dec. ¶ 11, but he works on personal injury cases, *see id.* ¶ 2, not civil rights cases, so what he bills is not especially relevant. Turow also provides his billing rate ($750 per hour), Turow Dec. ¶ 11, and is the only one of the four to indicate that he has worked on civil rights cases, *id.* ¶ 5. But Turow's practice includes criminal and other civil matters, and his time spent actually practicing law has dropped since 1990 because of his career as an author. *Id.* ¶¶ 4-5, 11. It could very well have been a long time since Turow last worked on a civil rights case, and it could also be that he has worked on very few civil rights cases. Without more detail, the fact that he billed $750 an hour at the time the declaration was made is not persuasive.

The only other evidence of market rate that Bellamy offers in support of her request for $465 an hour is the fact that a district court awarded Needham $450 an hour in *Volland-Golden*, 2015 WL 12839131, at *3. Pl.'s Fee Pet. at 8. That award is solid evidence that the market rate for Needham's services was $450 an hour in 2015. It is not a given, however, that the market rate for his services would have risen in the two years since *Volland-Golden*. But seeing as Needham has practiced law for 33 years, R. 157-1, Needham Dec. ¶ 1—during which he has handled at least 47 separate federal civil rights or Title VII discrimination cases, *id.* ¶ 15—and that he tried two civil rights cases to verdict after he was awarded the $450 an hour in *Volland-Golden*, *see* Pl.'s Fee Pet. at 8, the Court thinks it reasonable to afford him

the same $15 raise as Hamilton, though again with the warning that the fee ceiling might have been reached.

### 3. Elizabeth Uribe

Bellamy requests that Uribe, who has been an attorney for seven years, be awarded a rate of $250 per hour. Pl.'s Fee Pet. at 11; *see Volland-Golden*, 2015 WL 12839131, at *4 (noting that Uribe has been licensed to practice law since 2010). In support of this request, Bellamy has (1) supplied declarations from two civil rights attorneys in Chicago—Jared Kosoglad and Tony Thedford—and (2) identified rates set for Uribe by district courts in other civil rights cases. *See* Pl.'s Fee Pet. at 11-12; R. 157-4, Kosoglad Dec.; R. 157-4, Thedford Dec. This time, the evidence that Bellamy has offered supports the rate that she has requested.

Unlike the declarations submitted on Needham's behalf, the Kosoglad and Thedford Declarations bear the dates of execution, detail each affiant's civil rights experience, and set out rates that each affiant has been awarded or has charged for civil rights work. *See* Kosoglad Dec.; Thedford Dec. Kosoglad and Thedford each provide enough information about their professional backgrounds such that they can be expected to have informed opinions on (1) the rates sought within the district for similar work and (2) the reasonableness of the specific rate sought for Uribe's services. Both attorneys aver that a rate of $250 per hour for Uribe is reasonable.[8] *See* Kosoglad Dec. ¶ 18; Thedford Dec. ¶ 16.

---

[8]Granted, these declarations are several years old. Kosoglad Dec. (dated January 20, 2014); Thedford Dec. (dated September 6, 2013). But if Kosoglad and Thedford believed $250 an hour reasonable in 2013-2014 when Uribe had less experience, they would certainly believe it to be reasonable today.

What's more, Kosoglad's declaration provides a helpful data point: In 2008, with about two years of civil rights experience under his belt, he was awarded $225 per hour for his work on *Thomas v. Cook County Sherriff's Department. Id.* ¶ 6; *Thomas ex rel. Smith v. Sheahan*, 556 F. Supp. 2d 861, 899 (N.D. Ill. 2008), *aff'd in part, rev'd in part on other grounds sub nom. Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010). Given that Uribe now has seven years of legal experience—not to mention the fact that nine years have passed since Kosoglad's award—it is reasonable to believe that the market rate for Uribe's services today could be something more than $225 an hour.

Uribe's past billing-rate awards provide further support for an increase from $225. So far, Uribe has had her billing rate set in two civil rights cases: she received $185 in 2013, *Morjal*, 2013 WL 2368062, at *6; and $225 in 2015, *Volland-Golden*, 2015 WL 12839131, at *4. *See* Pl.'s Fee Pet. at 11. That she previously received a $40 rate increase after two years tends to make increasing her rate now (after another two years) more reasonable.

Together, the declarations and Uribe's historical rate awards satisfy Bellamy's burden. Here, there is enough evidence that the market rate for Uribe's services has risen since it was last set in 2015, and is now at least $250 an hour. The Court awards Uribe $250 an hour.

### 4. Kevin Turkcan

Bellamy also asks the Court to award Turkcan a rate of $250 per hour. Pl.'s Fee Pet. at 7, 10-11. The only evidence that Bellamy offers in support of this

request, however, is the fact that Turkcan's rate was set at $200 an hour in 2015, *see Baker*, 2015 WL 1888004, at *4. Pl.'s Fee Pet. at 10-11. Because Turkcan has practiced law for an additional two years, and has tried an additional three civil rights cases, Bellamy believes he is entitled to a $50 an hour raise. *Id.* at 11. But she has not supplied any evidence—like an affidavit from a similarly experienced civil rights attorney saying that he or she charges $250 an hour—that would justify a $50 increase. The Court agrees that a raise in rate is warranted given Turkcan's increased experience, but because Bellamy did not justify the raise that she requests, the Court will only give him the $15 an hour raise it gave to Hamilton and Needham. Turkcan's rate in this case is set at $215 per hour.

### 5. Anna Szymczak

As with Uribe and Turckan, Bellamy asks that Szymczak be awarded $250 per hour. Pl.'s Fee Pet. at 7, 12. This time, however, Bellamy submitted neither "best" evidence (of what Szymczak has billed for similar work) nor "next best" evidence (of affidavits from similarly experienced attorneys in Chicago describing the rates that they charge *or* evidence of rates set for Szymczak in a similar cases) to support the requested rate.[9] Bellamy did not even submit a declaration by Szymczak—or anyone else at the firm—describing Szymczak's experience as an

---

[9]Bellamy says that the City of Chicago recently agreed to a rate of $250 per hour for Szymczak in a FOIA lawsuit in May 2016. Pl.'s Fee Pet. at 12. But the Agreed Order in that case indicates that the City paid less than what Szymczak's firm had demanded, without revealing what fees or costs had been reduced. *See* R. 157-5, Demand & Agreed Order at 2-3.

attorney.[10] Because Bellamy has utterly failed to meet her burden, the Court awards the rate that the Defendants have suggested: $150 per hour.

* * *

To summarize, the Court has set the following hourly rates:

| Attorney: | Requested: | Granted: |
|---|---|---|
| Torreya Hamilton | $465 | $465 |
| Thomas Needham | $465 | $465 |
| Elizabeth Uribe | $250 | $250 |
| Kevin Turkcan | $250 | $215 |
| Anna Szymczak | $250 | $150 |
| Paralegal[11] | $125 | $125 |

## B. Number of Hours

A district court must exclude from the initial fee calculation any hours that were not "reasonably expended," which includes hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted). When submitting a fee petition, the attorneys for the prevailing party are supposed to use the same "billing judgment" that they would use when presenting a client with a legal bill. *See id.* (internal quotation marks omitted). This

---

[10]The Illinois' Attorney Registration & Disciplinary Commission website indicates that Szymczak has been a member of the Illinois bar since November 2014. *See* Lawyer Search, ARDC, https://www.iardc.org/lawyersearch.asp (search "Last Name" for Szymczak).

[11]Defendants do not object to the paralegal billing rate. *See* Defs.' Resp. at 14 n.3.

means that Bellamy's counsel was supposed to make a "good faith effort" to exclude from the fee request any hours that were not reasonably expended. *Id.*

Here, Defendants claim that Bellamy's attorneys billed for hours that were not reasonably expended or were insufficiently documented. Defs.' Resp. at 11-12. Defendants have identified a few categorical objections in their brief, *see id.* at 11-14, but have made many more line-item objections in the billing spreadsheets attached to their brief, *see* R. 176-1, Defs.' Hamilton Obj.; R. 176-2, Defs.' Needham Obj.; R. 176-3, Defs.' Turkcan Obj.; R. 176-4, Defs.' Uribe Obj.; R. 176-5, Defs.' Szymczak Obj.; R. 176-6, Defs.' Add. Paralegal Hours. As the Court sees it, the objected-to billing entries all fit under one of eight broad-based objections: (1) some entries are duplicative and some work was overstaffed; (2) excessive time was spent on certain legal tasks; (3) some entries are too vaguely described; (4) some entries relate to issues on which Bellamy did not prevail; (5) some entries bill for work that was not necessary for the case; (6) some entries charge for lower-level tasks at an attorney rate instead of at the paralegal rate; (7) some entries involve matters of "internal management" that should not be billed to a client; and (8) some entries involve background research that should not be billed to a client. The Court addresses each type of objection in turn.[12]

---

[12]The Court has only evaluated the objected-to billing entries in terms of the specific ground(s) that Defendants identified—either in their brief or in the billing spreadsheets—as their reason for objecting. This means that where Defendants objected to an entry solely on the ground that it was, for example, duplicative but it was not, the Court allowed the time even though the defense might have successfully objected on another ground (for example, time spent working on a losing claim). *See Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 664 (7th Cir. 1985) ("Counsel who oppose the fees have a …

## 1. Duplicative Billing and Overstaffing

Defendants maintain that Bellamy's attorneys engaged in excessive interoffice communication and unnecessarily performed the same tasks.[13] *See* Defs.' Resp. at 12-13. Because many law firms do tend to overstaff their cases, the Court has closely scrutinized Bellamy's fee petition for duplicative time. *See Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). The Court does not believe, however, that Bellamy's counsel engaged in pervasive overstaffing.

During the fifteen months that elapsed between the filing of the original complaint in March 2015 and the case going to trial in June 2016, Bellamy was represented by a total of five attorneys. *See* Pl.'s Reply at 8; *see also* R. 3, Hamilton Appearance; R. 5, Uribe Appearance; R. 6, Turkcan Appearance; R. 49, Szymczak Appearance; R. 54, Needham Appearance. But not all of those attorneys represented her the whole time. *See* Defs.' Hamilton Obj. (billing from July 5, 2014 to September 1, 2016); Defs.' Needham Obj. (billing from July 7, 2014 to August 15, 2016); Defs.' Turkcan Obj. (billing from January 7, 2015 to September 1, 2015); Defs.' Uribe Obj. (billing from July 7, 2014 to June 2, 2015); Defs.' Szymczak Obj. (billing from September 9, 2015 to May 9, 2016). Hamilton, Needham, and Uribe worked on the case from its outset, in July 2014. *See* Defs.' Hamilton Obj. (Row 7:

---

responsibility to state objections with particularity and clarity. Miscellaneous fee data cannot just be dumped on the bench for the judge to sort through and resolve.").

[13]Defendants marked the time entries they believe are duplicative with the objection "[d]uplicative of another attorney's work." This approach was largely unhelpful because Defendants did not identify whose work the entry is duplicative of, making it difficult to assess the validity of and basis for each of the Defendants' objections. In the future, when objecting to a billing entry as duplicative, defense counsel should be sure to identify what that entry is duplicative of (simply adding an attorney name and row number to the "Defendants' Objections" column would have helped).

"initial client interview with [Needham], [Uribe], Plaintiff"). Turkcan became involved in the case in January 2015, and took over Uribe's responsibilities as the primary associate in May 2015. *See* Defs.' Turkcan Obj. (Row 25: "Case transition meeting with [Uribe]"). Szymczak then joined the case in September 2015, but stopped working on it in May 2016. *See* Defs.' Szymczak Obj. at 1, 42. So, there were at most four attorneys billing for the case at any given time, and often three. This staffing situation might be excessive for the average § 1983 lawsuit, but Defendants in this matter engaged in similarly heavy staffing: five attorneys entered appearances for the defense, *see* R. 20, Marx Appearance; R. 23, Acuff Appearance; R. 41, Moore Appearance; R. 82, Martin Appearance; R. 95, Kabacinski Appearance, and three attorneys represented Defendants at trial, *see* R. 87, Proposed Pretrial Order. For this reason, Defendants' claims of overstaffing are largely overblown.

That said, the Court agrees with Defendants that the hours that Bellamy's attorneys devoted to drafting and reviewing emails are inflated.[14] Although "[t]he practice of law often, indeed usually, involves significant periods of consultation among counsel," *Tchemkou v. Mukasey*, 517 F.3d 506, 511 (7th Cir. 2008), billing in increments of 0.10 of an hour, or six minutes, for exchanging and reviewing emails is bound to be excessive, especially where three or four attorneys (two of whom were senior partners) were a part of most email chains. *See Smith v. Altman*, 2015 WL

---

[14]Defendants occasionally objected to the exchange of emails as "[i]nternal communication," *see, e.g.*, Defs.' Hamilton Obj. (Row 525), rather than as "[d]uplicative of other attorney's work." These objections appear to protest the same thing—excessive billing for drafting and reviewing emails—so the Court has treated them the same.

5675376, at *8 (N.D. Ill. Sept. 21, 2015). To compensate, the overall billing for drafting and reviewing emails should be reduced by one-third.[15]

Apart from email communications, however, the Court finds that most of the hours that Bellamy's attorneys billed for other types of interoffice communication (for example, face-to-face meetings, reviewing each other's work) were reasonable. "There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007). But, in general, "[t]alking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney trying to wade through an issue alone." *Tchemkou*, 517 F.3d at 511-12.

In this case, an overall evaluation of the billing records reveals that—for the most part—Bellamy's attorneys kept the number and length of their consultations reasonable. The entire litigation team met around 13 times in 18 months for case status meetings. And these meetings were generally brief: many were only 0.10 to 0.20 hours long. It was reasonable for Bellamy's attorneys to quickly check in with

---

[15]The Court does not know what this reduction amounts to in hours because Defendants did not identify for the Court the total number of email hours that they are objecting to, nor did they object in such a way that the Court could efficiently figure out the number for itself. So, by September 8, 2017, Defendants shall inform Bellamy of (1) the total number of email hours they have objected to and (2) exactly which billing entries comprise their objection. Then, on September 22, 2017, the parties shall jointly file a position paper with the Court stating whether they agree as to the total number of email hours to which the one-third reduction should apply. If the parties are not in agreement, then they should explain with specificity the grounds for their disagreement. The Court will then enter final judgment as to attorneys' fees. Of course, the parties are encouraged to engage in settlement negotiations to speed along the resolution of the fees issue.

one another on the progress of the case on a less than monthly basis.[16] So the Court

allows the time billed by all of Bellamy's attorneys for case status meetings with a

couple of adjustments:

- **September 3, 2014 Case Status Meeting.** Hamilton and Needham billed 0.10 hours for this meeting, R. Defs.' Hamilton Obj. (Row 13); Defs.' Needham Obj. (Row 5), but Uribe billed 1.00 hours, Defs.' Uribe Obj. (Row 5). Uribe's hours shall be reduced by 0.90 hours.

- **September 9, 2014 Case Status Meeting.** Hamilton and Needham billed 0.10 hours for this meeting, Defs.' Hamilton Obj. (Row 14); Defs.' Needham Obj. (Row 6), but Uribe billed 1.00 hours, Defs.' Uribe Obj. (Row 6). Uribe's hours shall be reduced by 0.90 hours.

- **January 7, 2015 Case Status Meeting.** On this date, Hamilton billed 0.20 hours to "confer with TPN re: case status and strategy," Defs.' Hamilton Obj. (Row 23), and 0.30 hours for "case status meeting with litigation team re: claims & defendants," *id.* (Row 25). Meanwhile, Turkcan and Needham each billed 0.30 hours for a single case status meeting with Hamilton. *See* Defs.' Turkcan Obj. (Row 1); Defs.' Needham Obj. (Row 19). Since Needham's bills reflect only one meeting with Hamilton, and because there was no good reason to hold two separate case status meetings on the same day, the entry to "confer with TPN re: case status and strategy" is stricken, and Hamilton's hours shall be reduced by 0.20 hours.

- **September 2, 2015 Case Status Meeting.** Hamilton and Needham billed 0.10 hours for this meeting, Defs.' Hamilton Obj. (Row 116); Defs.' Needham Obj. (Row 66), but Turkcan billed 0.20 hours, Defs.' Turkcan Obj. (Row 76). Turkcan's hours shall be reduced by 0.10 hours.

Separate from the case status meetings, Bellamy's attorneys also held a

handful of trial-team meetings. In particular, Hamilton, Needham, Turkcan, and

Uribe met on April 5, 2016 for 1.00 hours to prepare for the upcoming pretrial

---

[16]Defendants alternate between objecting to the billing entries for case status meetings on the ground that they are duplicative and the ground that they are vague. But "case status meeting," at least the way it is used here, is not vague: it is clear from context that the team met on a near-monthly basis to check in on the status of the case.

conference and the pretrial filing due dates. *See* Defs.' Needham Obj. (Row 169: "meeting with TLH, KTT, ARS to discuss trial (exhibits, witnesses we need, pretrial order, motions in limine and jury instructions)").[17] Then, at the end of each trial day, Hamilton, Needham, and Turkcan met for an hour or two, ostensibly to discuss how the prior trial day went and strategy for the next day. *See, e.g.*, Defs.' Turkcan Obj. (Rows 494, 511). It was entirely reasonable for the full trial team to have these meetings, so the time billed for them is allowed.

In addition to case-status and trial-team meetings, Defendants have made duplicative-work objections to billing entries for a variety of other interactions between Bellamy's attorneys. Indeed, they have objected (1) when an attorney met with at least one other litigation-team member to discuss a specific aspect of the case, *see* Defs.' Hamilton Obj. (Rows 28-30, 109, 165, 188, 201, 206, 275, 357, 516-17, 535,[18] 550, 761); Defs.' Szymczak Obj. (Rows 77, 143, 212, 226, 232); Defs.' Turkcan Obj. (Rows 15, 25, 74, 132, 228, 277, 375, 429, 486); Defs.' Uribe Obj. (Row 20); Defs.' Needham Obj. (Row 216); and (2) when an attorney edited or reviewed a document drafted by another attorney or produced by defense counsel,[19] *see* Defs.'

---

[17]Defendants object to Hamilton's billing entry for this meeting as vague, *see* Defs.' Hamilton Obj. (Row 445); that objection is meritless in light of Needham's very specific billing entry.

[18]Defendants objected to this entry as "[i]nternal communication," rather than as "[d]uplicative of other attorney's work." The Court has viewed these objections as protesting the same thing: excessive and duplicative billing for meetings.

[19]Defendants also made duplicative-work objections to time billed to draft documents, presumably on the ground that they were later reviewed by at least one other attorney (as the Court found no evidence that any attorney drafted something that another attorney had already drafted). *See* Defs.' Uribe Obj. (Rows 22-23); Defs.' Turkcan Obj. (Rows 38, 121, 185, 194, 427, 493); Defs.' Szymczak Obj. (Rows 16, 102, 106, 127, 146, 150, 169, 214); Defs.' Hamilton Obj. (Row 267).

Hamilton Obj. (Rows 33, 82-83, 149, 153, 167, 173, 182, 185, 194, 200, 208, 254, 368, 583, 625, 786, 788); Defs.' Turkcan Obj. (Rows 8, 15, 65, 77, 112, 126, 131, 139, 147, 154, 156, 178, 188, 235, 256, 260-61, 290, 301, 331, 344, 347, 350); Defs.' Szymczak Obj. (Rows 5, 50, 78-79, 107, 171, 178, 185, 190, 192, 233, 241); Defs.' Needham Obj. (Row 177). But it is standard practice for attorneys to meet to discuss issues and case-related assignments, to review each other's work (either to verify that the substance of the work is accurate or to remain up to speed on the case), and to look over documents produced by the defense. And although the 0.10 hour billing increment is excessive for the average email exchange, it is much more reasonable for real time-discussions and for drafting, editing, and reviewing documents. Having closely inspected the billing records, the Court sees no suggestion that an excessive number of attorneys undertook these activities.[20] So, the Court allows the time billed for the objected-to entries with a few minor adjustments:

- **Hamilton, 01/27/15, "confer with ARS re: Ds' SJ motion" (0.20 hours).** On January 27, 2015, Hamilton billed 0.20 hours to "confer with ARS re: Ds' SJ motion" and 0.40 hours to "confer with ARS, TPN (Separately) re: Ds' SJ motion." Defs.' Hamilton Obj. (Rows 29-30). Needham and Szymczak, however, billed only a combined 0.40 hours for this meeting. *See* Defs.' Needham Obj. (Row 156); Defs.' Szymczak Obj. (Row 143).[21] Hamilton's hours shall be reduced by 0.20 hours.

---

[20]Indeed, for several of the objected-to entries, the Court could not find any indication that more than one attorney billed for the same activity. *See, e.g.*, Defs.' Hamilton Obj. (Rows 28, 165, 188, 275, 357, 516-17, 550, 761); Defs.' Turkcan Obj. (Rows 15, 132, 375, 429).

[21]Hamilton billed for this meeting in January *2015*, while Needham and Szymczak billed for this meeting in January *2016*. Given that the complaint had not even been filed as of January 2015, the year given for Hamilton's billing entry is clearly a mistake (it must mean January 27, 2016).

- **Turkcan, 06/12/16, "Phone call with TPN re: Trial prep with N. Kerr" (0.30 hours).** Turkcan billed 0.30 hours for this phone call with Needham. Defs.' Turkcan Obj. (Row 486). Needham, however, billed only 0.20 hours for the same conversation. Defs.' Needham Obj. (Row 257). Turkcan's hours shall be reduced by 0.10 hours.

- **Turkcan, 11/06/15, "Draft memorandum summarizing Plaintiff's deposition" (1.50 hours).** On November 06, 2015, Turkcan billed 1.50 hours to draft this memorandum, Defs.' Turkcan Obj. (Row 194), but Turkcan had already billed 2.50 hours to complete the same task on October 30, 2015, *see id.* (Row 185). Turkcan's hours shall be reduced by 1.50 hours.

Defendants have also made duplicative-work objections where multiple attorneys attended client meetings, witness interviews, and depositions. In particular, Defendants object to the fact that two attorneys billed to attend the Bellamy, Wysinger, and Love depositions. *See* Defs.' Turkcan Obj. (Rows 162, 205); Defs.' Szymczak Obj. (Row 141). But two defense attorneys attended Bellamy's deposition, *see* R. 183-3, Dep. Excerpts at 6-7, so Defendants have no good reason to object to Turkcan and Syzmczak both attending that deposition. And, though only one defense attorney attended the Wysinger and Love depositions, *see id.* at 22-23, 38-39, it was not unreasonable for two of Bellamy's attorneys to attend. First, though Turkcan and Szymczak both attended the Wysinger deposition, Turkcan only attended for part of the time. *See* Defs. Turkcan Obj. (Row 205: "deposition of Wysinger (not there for whole dep)," 2.80 hours). Second, it was not out of the ordinary for two defense attorneys to attend the depositions: two defense attorneys attended three of the ten depositions. *See* Dep. Excerpts at 6-7, 18-19, 30-31. So, the Court allows Bellamy the entirety of the time billed by her attorneys to attend depositions.

Finally, the Court finds the time billed by Bellamy's attorneys for client meetings and witness interviews acceptable, with two exceptions:

- **July 7, 2014 First Client Meeting.** Hamilton, Needham, and Uribe each billed 1.00 hours for their first meeting with Bellamy. *See* Defs.' Hamilton Obj. (Row 7); Defs.' Needham Obj. (Row 1); Defs.' Uribe Obj. (Row 1). The attendance of three attorneys, especially when two of those three were the equivalent of senior partners, is excessive. And, in all likelihood, Needham was present to discuss representing Bellamy in her criminal case, which is not something that should be billed to Defendants. Needham's hours shall be reduced by 1.00 hours.

- **May 25, 2016 Client Meeting.** On May 25, 2016, Hamilton and Needham billed to go to 31st Street Beach with Bellamy. *See* Defs.' Hamilton Obj. (Row 599: 1.90 hours); Defs.' Needham Obj. (Row 210: 1.90 hours). Hamilton's billing entry states that Turkcan was also in attendance (though Turkcan did not himself bill for this meeting). *See* Defs.' Hamilton Obj. (Row 599: "scene visit with [Turkcan], Plaintiff and [Needham]—take photos"). It was not necessary for three attorneys to visit the scene with Bellamy to take pictures—only one attorney's presence was necessary, and a junior associate would have been sufficient. Hamilton's and Needham's hours shall each be reduced by 1.90 hours; in exchange, Turkcan's hours shall be increased by 1.90 hours.

### 2. Excessive Billing

Defendants also contend that Turkcan and Syzmczak took too much time to complete certain tasks. *See* Defs.' Turkcan Obj. (Rows 352, 516, 519); Defs.' Szymczak Obj. (Rows 7, 25, 33-34, 38, 74-75, 126, 128-29, 231, 236). Because each excessive-billing objection is unique, the Court will address them individually:

- **Turkcan, 04/28/16, "Draft MIL regarding Plaintiff's consumption of alcohol (including legal research)" (4.00 hours).** This non-standard motion in limine is six-pages long, and has multiple case citations. *See* R. 90, Pl.'s Mots. in Limine at 1-6. 4.00 hours is not an unreasonable amount of time for a relatively inexperienced attorney to research and write something of this length. The time is allowed.

- **Turkcan, 06/15/16, "Jury trial" (8.50 hours).** According to the Court's notes, trial on June 15th started at around 8:50 a.m. and ended a little after 5:00 p.m. Turkcan's hours shall be reduced by 0.20 hours.

- **Turkcan, 06/16/16, "Jury trial" (8.50 hours).** According to the Court's notes, trial on June 16th started at around 8:50 a.m. and ended a little after 4:40 p.m. Turkcan's hours shall be reduced by 0.50 hours.

- **Szymczak, 10/08/15, "Review 15-year CR histories for 4 defendant officers for completeness, cross-reference CR's produced by Defense" (3.00 hours).** It should not have taken Szymczak 3.00 hours to compare four CR histories—four pages in total, *see* Defs.' Resp. at 14—to the CR's that the defense produced. Szymczak's hours shall be reduced by 2.00 hours.

- **Szymczak, 10/12/15, "Review CR files to determine what [is] missing; send correspondence to lead attorney; print documents for file" (1.00 hours).** Reviewing the contents of files is at least as time-intensive as simply checking to make sure that files are present and accounted for (which is what Szymczak did on October 8, 2015). The time is allowed.

- **Szymczak, 10/14/15, "Review additional production from Jason Marx, FCRL 1818-30" (0.50 hours).** Depending on their substance, it could take 30 minutes to review 13 pages of discovery. So, absent the defense indicating that these pages were an easy read, 0.50 hours is reasonable. The time is allowed.

- **Szymczak, 10/14/15, "Create summary based on new production FCRL 1818-30" (0.50 hours).** Again, depending on the substance of FCRL 1818-30, 0.50 hours to create a summary could be reasonable. The time is allowed.[22]

- **Szymczak, 10/14/15, "Draft cover letter to accompany Craig Akin's subpoena for deposition" (0.20 hours).** The time billed for this task is excessive given how routine it is to draft a cover letter to accompany a subpoena; the firm likely had a template to use as a starting point. Szymczak's hours shall be reduced by 0.10 hours.[23]

---

[22]Defendants claim not only that the time for this task was excessive but that it should be billed at the paralegal rate instead of at Szymczak's rate. *See* Defs.' Szymczak's Obj. (Row 34). But summarizing evidence is an appropriate task for an attorney, so the Court will allow Szymczak to bill for it.

[23]Defendants also ask that this task be billed at the paralegal rate. *See* Defs.' Szymczak's Obj. (Row 38). But a letter accompanying a subpoena reasonably could discuss legal obligations, so the Court will allow Szymczak to bill for it.

- **Szymczak, 11/03/15, "Supplement to motion to compel. Find and review all 27 CRs, pick individual CRs, review content, write draft[.] Supplement with CR information" (3.50 hours).** The supplement to the motion to compel is eight-pages long, with seven pages of attachments. *See* R. 59, Supp. Mot. to Compel (Under Seal). 3.50 hours is not an unreasonable amount of time for an inexperienced attorney to write something of this length. The time is allowed.

- **Szymczak, 11/04/15, "Rework and continually edit draft supplement in support of motion to compel" (2.40 hours).** 2.40 hours is not an unreasonable amount of time for an inexperienced attorney to rewrite and edit an eight-page motion. This time is allowed.

- **Szymczak, 01/12/16, "Review Defendants' written discovery responses and Draft 37.2 letter to O/C" (1.50 hours).** 1.50 hours is not out of the ordinary for this task; the time is allowed.

- **Szymczak, 01/13/16, "Revise LR 37.2 letter regarding Defendants responses to Plaintiff's requests to produce and send for review" (1.00 hours).** 1.00 hours is not out of the ordinary for this task; the time is allowed.

- **Szymczak, 01/13/16, "Finalize first draft of Plaintiff's LR 37.2 Letter re: interrogatories, send to KTT for review" (0.50 hours).** 0.50 hours is not out of the ordinary for this task; the time is allowed.

- **Szymczak, 04/29/16, "Begin drafting Plaintiff's Mils 1-8" (2.00 hours):** Bellamy's motions in limine were twenty-two pages in total. *See* Pl.'s Mots. in Limine. Some were standard and some were not. *See id.* Overall, 3.50 hours total (see next bullet point) to draft fourteen motions in limine[24] is reasonable. The time is allowed.

- **Szymczak, 05/02/16, "P's MILs 8-14" (1.50 hours).** See previous bullet point. This time is allowed.

### 3. Vague Billing

Defendants also contend that some of Bellamy's attorneys' billing entries are insufficiently described. Defs.' Resp. at 13. The Court has addressed a few of

---

[24]Turkcan also billed to draft the first motion in limine. *See* Defs.' Turkcan Obj. (Row 352). But Defendants did not make a duplicative-work objection to either billing entry, and 3.50 hours is still a reasonable amount of time in which to draft thirteen motions in limine.

Defendants' vagueness objections already, and now resolves the handful that remain:

- **Hamilton, 02/16/15, "confer with TPN re: claims and defendants" (0.30 hours).** This entry is not vague given the context of the case—the parties were in the process of drafting the complaint. The time is allowed.

- **Hamilton, 10/26/15, "review CR charts for each D—instructions to ARS" (0.40 hours).** This entry is not too vague given the context of the case—the parties were in the process of preparing a motion to compel the defense to produce missing CR files, *see* R. 55 (filed October 29, 2015). The time is allowed.

- **Hamilton, 03/10/16, "email from ARS re: deps ordered" (0.10 hours).** This entry is too vague (what depositions were ordered and for what purpose?). Hamilton's time shall be reduced by 0.10 hours.

- **Hamilton, 03/18/16, "email to TPN re: due date of MILs" (0.10 hours).** This entry is not vague. The time is allowed.

- **Hamilton, 03/23/16, "emails with ARS re: P's Rog Responses" (0.10 hours).** This is not vague; the billing records indicate that at the time, Bellamy's attorneys were working on responses to supplemental interrogatories. The time is allowed.[25]

- **Hamilton, 03/25/16, "email from KTT re: DSe failure to dep Kofi" (0.10 hours).** This entry is not vague. The time is allowed.

- **Hamilton, 03/27/16, "email to ARS with guidance for MILs" (0.10 hours).** This entry is not too vague. The time is allowed.

- **Hamilton, 03/28/16, "emails (3) with ARS re: MILs" (0.20 hours).** This entry is not too vague; at the time, the parties were at the early stages of preparing for the upcoming pretrial conference. The time is allowed.

- **Turkcan, 07/01/15, "Attend status hearing before J. Wood" (0.50 hours).** This entry is too vague (the reference to Judge Wood is unexplained). Turkcan's hours shall be reduced by 0.50 hours.

---

[25]Defendants' spreadsheets show two bills for this same activity, *see* Defs.' Hamilton Obj. (Rows 431-32), but the spreadsheets that Bellamy submitted with her fee petition have corrected this error, *see* R. 157-2, Hamilton Bills at 19.

- **Turkcan, 07/08/15, "Prepare Plaintiff's document production key summary memorandum" (0.40 hours).** This entry is not vague. The time is allowed.

- **Uribe, 05/04/15, "prepare 1st draft of JISR for TLH" (0.50 hours).** This entry is not vague: Uribe prepared the first draft of the joint initial status report. The time is allowed.

- **Szymczak, 12/10/15, "appear in court" (0.70 hours).** This entry is not too vague; a status hearing was held on that date, *see* R. 73, 12/10/15 Minute Entry. The time is allowed.

- **Szymczak, 12/21/15, "gather documents and other information per TH instructions" (0.50 hours).** This entry is too vague, and Hamilton's entry regarding her instructions does not add clarity, *see* Defs. Hamilton Obj. (Row 316: "draft notes to ARS re: to do list on case in final discovery weeks"). Szymczak's hours shall be reduced by 0.50 hours.

### 4. Billing for Issues on Which Bellamy Did Not Prevail

Defendants also claim that Bellamy's attorneys have billed for time spent on arguments that Bellamy lost or that are not sufficiently related to the excessive force claim on which Bellamy prevailed. Defs.' Resp. at 13-14. In particular, they have objected to time billed for work done (1) on Bellamy's criminal case; (2) with respect to Defendant Haywil; (3) on a FOIA request to the Independent Police Review Authority; (4) to respond to Defendants' HIPAA motion, R. 47; R. 51; (5) on Bellamy's first motion to compel, R. 55, and its supplement, R. 59; (6) to otherwise obtain and use Rule 404(b) evidence at trial; (7) to voluntarily dismiss Defendants Benson, Wysinger, and Willis, R. 75; R. 80; (8) to reopen discovery to take Dr. Ruskis's Deposition, R. 96; (9) on Bellamy's emergency motion to compel production of OEMC event queries and audio recordings, R. 114, and related OEMC pretrial work; (10) on Bellamy's response in support of her trial exhibits 3 and 12B, R. 111;

(11) on Bellamy's motion to reconsider the Court's ruling on Defendants' fourteenth motion in limine, R. 112; (12) on Bellamy's malicious prosecution claim; (13) on Bellamy's motion for post-trial discovery, R. 138; (14) on Bellamy's motions for prejudgment and post-judgment interest, R. 142; R. 160; (15) on Bellamy's bill of costs, R. 140; and (16) on other post-trial work. The Court will address each of these categories of objections, flagging individual entries as necessary.

But first, a brief primer on fees for unsuccessful claims and arguments: to start, a prevailing plaintiff is "not entitled to fees for time expended pursuing unsuccessful claims that were unrelated to those claims on which the plaintiff ultimately prevailed." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). That said, "when claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Id.* So, federal courts have allowed the recovery of fees for unsuccessful claims where those claims involved "a common core of facts or related legal theories." *Id.* at 414. By the same reasoning, "courts may award fees for time reasonably spent on an unsuccessful argument in support of a successful claim." *Id.* "[T]he touchstone in such a case is not whether a particular argument was successful, but rather whether it was reasonable." *Id.*; *see Montanez*, 755 F.3d at 555 ("It's not unexpected that some legal research will prove fruitless on an ultimately successful claim, and a prevailing party may in appropriate circumstances recover for time spent going down roads that seemed promising but turn out to be dead ends.").

Defendants' spreadsheets include objections to (a) time that Needham spent representing Bellamy in her criminal case, *see* Defs.' Needham Obj. (Row 3), and (b) time that team members spent discussing the status of the criminal case, *see* Defs.' Needham Obj. (Rows 4, 7, 8); Defs.' Hamilton Obj. (12, 15-17). Bellamy has acknowledged that she may not recover for the former, Pl.'s Reply at 11, and the spreadsheets that she filed along with her fee petition do not actually include time billed to represent Bellamy in the criminal matter.[26] But Bellamy is allowed the time billed to keep Hamilton and Uribe apprised of the progress of the criminal case, *see* Defs.' Needham Obj. (Rows 4, 7, 8); Defs.' Hamilton Obj. (12, 15-17)—that time is recoverable because the outcome of Bellamy's criminal case was pertinent to her civil case.

Defendants also object to billing entries that reflect work done with respect to Defendant Haywil. *See* Defs.' Hamilton Obj. (Rows 52, 55, 64, 67-68, 70, 72-74, 76, 86-87, 89-91, 232-33); Defs.' Needham Obj. (Rows 34,[27] 36, 41-42, 47-48, 51, 106-07, 109-11, 113, 122, 141); Defs.' Turkcan Obj. (Rows 47-48, 50); Defs.' Szymczak Obj. (95, 112-114). Bellamy's claims against Haywil—specifically, that Haywil was vicariously liable for state-law battery and malicious prosecution, First Am. Compl. ¶¶ 50-59—were not sufficiently related to the excessive force claim on which Bellamy prevailed at trial. And the objected-to entries—which pertain to serving

---

[26]Defendants appear to have used an earlier version of the billing spreadsheets to make their line-item objections. Pl.'s Reply at 11.

[27]Defendants also objected to this entry as "[b]ackground research, not billable to defendants." The Court has not discussed this entry in the subsection on Defendants' background-research objections, *see infra* Section III.B.8, because the entry is stricken on the "research not regarding defendants" ground for pertaining to Haywil.

Haywil and the motion for entry of default against Haywil—were not for the sort of work that would have contributed to Bellamy's eventual success on the excessive force claim. So, Bellamy may not recover for the objected-to billing entries, with two minor exceptions:

- **Needham, 11/24/15, "Review facebook info of Watkins and HayWil owners (found by ARS)" (0.10 hours).** This entry reflects work done with respect to Haywil *and Watkins.* Bellamy may bill for the time spent reviewing Watkins's facebook info, so the Court cuts the time billed in half and allows Needham 0.05 hours.

- **Szymczak, 12/14/15, "Research Online presence for witness Craig Akins and Haywil owners" (1.00 hours).** This entry reflects work done with respect to Haywil *and Creig Atkins*—a witness to the altercation between Watkins and Bellamy—which is work that can reasonably be said to have contributed to Bellamy's eventual success against Watkins. Szymczak is allowed 0.50 hours for this work.

Hamilton's hours shall be reduced by 3.70 hours; Needham's hours shall be reduced by 2.85 hours; Turkcan's hours shall be reduced by 1.10 hours; and Szymczak's hours shall be reduced by 1.60 hours.

For similar reasons, Defendants' objections to time billed for work done to voluntarily dismiss Defendants Benson, Wysinger, and Willis, *see* Defs.' Turkcan Obj. (Rows 316-18); Defs.' Szymczak Obj. (Rows 155-56, 159), and to time billed to advance Bellamy's malicious prosecution claim, *see* Defs.' Szymczak Obj. (Row 216), are sustained.[28] Though the claims against Benson, Wysinger, and Willis were related to the excessive force claim against Wysinger, the agreed motion to

---

[28]Some of these entries are objected to on the ground that Bellamy "[d]id not prevail on this issue," while others are objected to as "[u]nnecessary to prevailing in case." The Court has addressed them together in this section because to the extent this work was unnecessary, it was because Bellamy did not prevail on these claims and the objected-to work cannot reasonably be said to have contributed to Bellamy's success at trial.

voluntarily dismiss them from the case did not contribute to Bellamy's success on her excessive force claim. The same is true for the single malicious-prosecution entry to which the defense objects. *See* Defs.' Szymczak Obj. (Row 216: "research and draft Jury Instructions on Malicious Pros and personal involvement requirement"). Turkcan's hours are reduced by 0.30 hours and Szymczak's hours are reduced by 1.60 hours.

Next, Defendants object to a variety of work that Bellamy's attorneys did to track down and use Rule 404(b) evidence at trial.[29] Some of this time is recoverable and some is not. Bellamy should receive fees for work that her attorneys did to seek out Rule 404(b) evidence until the time that the Court decided the first motion to compel, R. 55, First Mot. to Compel; R. 66, 11/22/15 Minute Entry (granting the motion in part and denying it in part). *See* Defs.' Hamilton Obj. (Rows 19, 199, 204); Defs.' Needham Obj. (Rows 12, 78, 112); Defs.' Turkcan Obj. (Row 213); Defs.' Szymczak Obj. (Rows 60-61). It was reasonable, at the outset of the case, for Bellamy's attorneys to look for other-acts evidence that might be admissible at trial. And it was reasonable for Bellamy's attorneys to file the motion to compel—indeed, after the filing, the defense agreed to turn over several of the requested CR files and some requested contact information, *see* R. 62, Defs.' Resp. to First Mot. to Compel,

---

[29]Defendants objected to these entries variably as "[w]ork not dealing with civil case," "[w]ork not necessary for case," "[n]ot billable to this case," "[n]ot necessary to this case," "[d]id not prevail," "[n]ot necessary to case," "did not prevail on this issue," and "unnecessary to prevailing in case." Because Defendants did not explain the nuances, if any, of these differing objections, the Court has addressed them all together, on the assumption that the basis for all of these objections is essentially the same: that Bellamy should not be allowed time billed to obtain Rule 404(b) evidence because that evidence was ultimately deemed inadmissible at trial.

and then the Court granted the remainder of the motion in part, 11/22/15 Minute Entry. That said, when the motion to compel was pending, the Court put Bellamy on notice that she would need to be able to explain how the evidence she was seeking "would be admissible under Rule 404(b) in view of United States v. Gomez, 763 F.3d 845, 859-60 (7th Cir. 2014) (en banc), which requires that the other-acts evidence have a propensity free relevance." R. 57, 10/29/15 Minute Entry. Bellamy, however, failed to adequately engage with *Gomez* in both her supplement to the motion to compel, R. 59, and in her briefing on the motions in limine, R. 91. *See* R. 98, 05/18/16 Order at 18 ("Bellamy's response does not address the controlling case law on Rule 404(b)."). Had Bellamy done a more thorough job of articulating a basis for admissibility (even assuming that the Court still would have deemed the evidence inadmissible), the Court might have allowed all of the time billed in pursuit of Rule 404(b) evidence. But since she did not, the Court finds any Rule 404(b) work done after the motion to compel was decided unreasonable. *See* Defs.' Hamilton Obj. (Rows 315, 361, 370,[30] 382, 390, 394, 411, 523); Defs.' Needham Obj. (Row 158); Defs.' Turkcan Obj. (Rows 314-15, 390); Defs.' Szymczak Obj. (Rows 140, 145, 194). Accordingly, Hamilton's hours are reduced by 1.60 hours; Needham's hours are reduced by 0.10 hours; Turkcan's hours are reduced by 0.30 hours; and Szymczak's hours are reduced by 1.40 hours.

---

[30]There were Rule 404(b) witnesses with the last-name "Williams," but this entry might also pertain to Kimberly Williams, one of Haywil's owners. *See* Defs.' Hamilton Obj. (Row 370: "email from Investigator re: Williams non---service, dodging"). Either way, it is not allowed.

Defendants additionally object to work that Bellamy's attorneys did to respond to Defendants' motion for entry of a qualified HIPAA and MHDDCA protective order, R. 47; R. 51. *See* Defs.' Szymczak Obj. (Rows 20-21, 23, 27). This time is allowed. Bellamy's response to the defense motion was reasonable: the defense was seeking access to *all* of Bellamy's medical and mental health history, and the response instead sought to limit the scope of the protective order to a three-year period of discoverable information. *See* R. 51, Pl.'s Resp. to HIPAA Mot. at 3. That three-year period is precisely what the Court allowed when it granted the motion in part and denied it in part. R. 52, 10/14/15 Minute Entry.

The same goes for the work that Bellamy's counsel did on the response in support of trial exhibits 3 and 12B, R. 111. *See* Defs.' Hamilton Obj. (Row 671). Bellamy's response brief was not frivolous; indeed, it articulated a basis for admissibility that persuaded the Court to reserve ruling on Defendants' objections until trial. *See* R. 121, 06/11/16 Order. The hours billed to draft, edit, and review Bellamy's brief are allowed.

The time billed for Bellamy's pretrial emergency motion to compel the production of OEMC event queries and audio, R. 114, and for related pretrial work, is also permitted. *See* Defs.' Hamilton Obj. (Rows 566-67, 591,[31] 597-98, 607, 609, 615, 630, 634, 655, 657, 659-60, 662, 665-670, 672-73, 676-83, 692, 695); Defs.' Needham Obj. (Rows 216, 221-24, 228, 230, 234-36, 239-40); Defs.' Turkcan Obj.

[31]Defendants also object to this entry on the ground that Bellamy "did not call Maderak." *See* Defs.' Hamilton Obj. (Row 591). But the fact that Maderak did not ultimately testify at trial does not make this entry unreasonable: the situation with the OEMC records continued to evolve after May 25, 2016, which could have impacted Bellamy's initial decision to call Maderak.

(Rows 403-04, 406-10, 412-13, 418, 431, 433-35, 439-43, 446, 448, 451, 457, 461, 464-66, 506). It was reasonable for Bellamy to seek to ensure that she had a complete and accurate copy of the OEMC event inquiries and any audio recordings prior to trial—especially once it appeared that there were, on the surface, potential inconsistencies between the OEMC Audio Research Log produced by the defense on May 31, 2016 and what had previously been provided to Bellamy. And the Court did ultimately grant the emergency motion to compel in part, *see* R. 120, 06/10/16 Minute Entry, prompting additional pretrial disclosures.

Bellamy may not, however, recover for work done on her motion to reopen discovery to take Dr. Ruskis's deposition, R. 96; *see* Defs.' Hamilton Obj. (Row 543); Defs.' Turkcan Obj. (Row 377), or on her motion for reconsideration of the Court's ruling on Defendants' fourteenth motion in limine, R. 112; *see* Defs.' Hamilton Obj. (Rows 604, 632-33, 636); Defs.' Needham Obj. (Row 229); Defs.' Turkcan Obj. (Rows 391, 396, 414), because Bellamy did not have a reasonable factual or legal basis for bringing either of these motions, *see* R. 105, 05/24/16 Order at 3 ("The trial date was set back on February 16, 2016, R. 79, yet Bellamy did not subpoena Ruskis for trial until three months later on May 16, 2016. R. 96 ¶ 3. This delay does not constitute good cause under Federal Rule of Civil Procedure 16(b)(4) to reopen discovery."); R. 112, Pl.'s Mot. for Reconsideration at 1-2 ("Plaintiff recognizes the case law supporting the Court's decision on this issue."). Hamilton's hours shall be reduced by 1.30 hours; Needham's hours shall be reduced by 0.20 hours; and Turkcan's hours shall be reduced by 3.70 hours.

Finally, Defendants have objected to a variety of post-trial work. Bellamy may not recover for the time billed for her post-trial discovery motion, *see* Defs.' Hamilton Obj. (Rows 750, 752, 755-58, 762-63, 771-73, 775, 789-92, 796-800); Defs.' Needham Obj. (Rows 288-89); Defs.' Turkcan Obj. (Rows 531-33, 536-44, 553, 555, 557-60, 565, 568-72), but may recover for everything else to which Defendants' have objected, *see* Defs.' Hamilton Obj. (Rows 754, 760, 764-66, 768-69, 777); Defs.' Turkcan Obj. (Rows 535, 545, 547-48, 564), including work on her motions for prejudgment and post-judgment interest, R. 142; R. 160, and her bill of costs, R. 140. Bellamy did not have a reasonable factual or legal basis for moving to re-open discovery after the trial. *See* R. 186, 03/31/17 Order at 1 ("There is neither a legal nor factual basis to re-open discovery after the trial."). But it was perfectly reasonable to file motions for prejudgment and post-judgment interest, as well as a bill of costs. Bellamy was awarded post-judgment interest on the $8,000 punitive-damages judgment, 03/31/17 Order at 2, and she is being granted costs by this Opinion, *see infra* Section III.D. What's more, she may not have "prevailed" on her motion for pre- and post-judgment interest on attorneys' fees, R. 142, but it is not accurate to say that she lost: the Court terminated the motion without prejudice to refiling it with the anticipated fees and costs motion. *See* R. 144, 07/22/16 Minute Entry. Rather than make the motion anew, Bellamy's fee petition asks for current market rate (in lieu of historical market rate plus interest). *See* Pl.'s Fee Pet. at 7 n.3. Regardless, it was reasonable for Bellamy's attorneys to file a motion seeking compensation for the delay in payment of their fees. So, striking only the billing

entries for Bellamy's post-trial discovery motion, Hamilton's hours are reduced by 6.00 hours; Needham's hours are reduced by 0.70 hours; Turkcan's hours are reduced by 10.50 hours.

## 5. Billing for Tasks Unnecessary to Case

In addition to asserting that Bellamy has billed for time spent on arguments that she lost or that are not sufficiently related to her excessive force claim, Defendants have further identified a handful of billing entries as "[n]on-essential work" or "[u]nnecessary to prevailing in case." *See* Defs.' Hamilton Obj. (Row 196); Defs.' Szymczak Obj. (Rows 73, 90, 137, 201). The Court deems all but two of these billing entries appropriate:

- **Szymczak, 11/03/15, "Type summary of deposition notes for Cynthia Bellamy (7 pages plus attorney work product summary and impressions)" (1.50 hours).** It is not clear to the Court why it was necessary to summarize "notes," which are themselves a type of summary. Szymczak's hours shall be reduced by 1.50 hours.

- **Szymczak, 01/19/16, "Make phone calls to psychologist or LCSW who Plaintiff saw; search online for contact information" (0.50 hours).** It is not clear, on the face of the billing entry, why contacting the psychologist was necessary to the case. Szymczak's hours shall be reduced by 0.50 hours.

## 6. Billing for Paralegal Tasks at Attorney Rate

Defendants also contend that several tasks completed by Bellamy's attorneys should have instead been performed by a paralegal, and thus should now be billed at the paralegal rate. *See* Defs.' Add. Paralegal Hours. Only one of the entries to which Defendants object, however, is a paralegal task[32]:

_____

[32]Uribe's bill to "file executed summons" on April 14, 2015, *see* Defs.' Add. Paralegal Hours, reflects a paralegal task, but Bellamy did not actually include this entry in the

36

- **Szymczak, 10/14/15, "Draft Notices of Depositions for four Defendant Officers" (0.30 hours)**

The rest of the entries may be billed at an attorney rate. Szymczak's hours are reduced by 0.30 hours; in exchange, the paralegal hours are increased by 0.30 hours.

### 7. Billing for Internal Management

Defendants object to two entries as "[i]nternal management" or "[i]nternal/personal task." The Court addresses each entry individually:

- **Hamilton, 12/21/15, "Draft notes to ARS re: to do list on case in final discovery weeks" (0.30 hours).** The language of this entry is ambiguous— did Hamilton jot down ideas to discuss with Szymczak at a later time or did Hamilton draft a document that was sent to Szymczak? Because the Court cannot tell what Hamilton is actually billing for, Hamilton's hours shall be reduced by 0.30 hours.

- **Szymczak, 10/07/15, "Create to-do list based on Discovery planning meeting" (0.50 hours).** Szymczak already billed 1.00 hours on October 7, 2016 to prepare for the October 8, 2016 discovery planning meeting, *see* Defs.' Szymczak Obj. (Row 11), so it is not clear that this entry is reasonable or appropriate. Szymczak's hours shall be reduced by 0.50 hours.

### 8. Billing for Background Research

Defendants object to several billing entries as "[b]ackground research, not billable to defendants." *See* Defs.' Needham Obj. (13, 29, 31, 37, 75); Defs.' Turkcan Obj. (Row 338); Defs.' Szymczak Obj. (18-19, 218-19, 237, 246-48). But it is not unreasonable for attorneys to spend time doing legal research. *See Inks v. Healthcare Distribs. of Ind.*, 901 F. Supp. 1403, 1415 (N.D. Ind. 1995). Having

---

billing spreadsheet attached to her fee petition, *see* 157-4, Uribe Bills at 9, so the Court need not reduce Uribe's hours.

received no elaboration on the objection from the defense, the time billed for legal research is allowed.[33]

* * *

In sum, not including the reduction for drafting and reviewing emails (which will be determined by the Court following receipt of the parties' position paper, *see supra* n.15), Hamilton's hours are reduced by 15.30 hours; Needham's hours are reduced by 6.75 hours; Uribe's hours are reduced by 1.80 hours; Turkcan's hours are reduced by 16.90 hours; and Szymczak's hours are reduced by 10.00 hours. The paralegal's hours are increased by 0.30 hours.

### C. Lodestar

Defendants ask the Court to reduce the lodestar amount by 50% to account for, in large part, Bellamy's limited success at trial. Defs.' Resp. at 2, 15-21; *see Linda T. ex rel. William A. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 708 (7th Cir. 2005) ("The Supreme Court has said that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." (internal quotation marks omitted)). In setting a reasonable fee, a district court must determine whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. "A plaintiff who achieves excellent results should receive the entire lodestar, but where

---

[33]Several of the entries to which Defendants objected might have been excluded had Defendants fleshed out their objection or objected on other grounds. *See, e.g.*, Defs.' Needham Obj. (Rows 29, 31, 37, 75); Defs.' Turkcan Obj. (Row 338); Defs.' Szymczak Obj. (Rows 218-19, 247-48). But, as the Court has already made clear, it has only analyzed billing entries in terms of the particular objection that the defense made.

a plaintiff has achieved only partial or limited success the lodestar may be an excessive amount." *Montanez*, 755 F.3d at 556 (internal quotation marks omitted).

Here, Bellamy alleged five claims against five defendant officers, voluntarily dismissed three of those officers, took three claims and two officers to trial, and ultimately prevailed on one claim against one officer (against whom the jury awarded $9,000.00 in compensatory damages and $8,000.00 in punitive damages). This was not an "excellent result[]," *id.* (internal quotation marks omitted). Nor were the issues presented to the jury novel or particularly complex. And the lodestar amount is *much* larger than the damages award. *See Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 558 (7th Cir. 1999) ("although the fee award need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor that a court should consider when contemplating a reduction of the modified loadstar amount").

Having considered all of the relevant factors, including the mix of losses with the single win, as well as the damages on the single winning claim, the Court finds that the lodestar should be reduced. But Defendants' suggestion of a 50% reduction is excessive: though Bellamy prevailed against only one defendant on one claim, she achieved more than a nominal recovery, establishing both a compensable injury and an entitlement to punitive damages against one of the officers. And, because the case arose from the altercation between Bellamy and Watkins, much of the work

done on the case was likely pertinent to the excessive force claim against Watkins. On balance, in the Court's view, a 20% reduction is appropriate.[34]

## D. Taxable Costs

Bellamy seeks $400.00 for fees of the clerk, $1,031.70 for fees for service of summons and subpoena, $4,501.87 for fees for transcripts, $182.18 for fees for witnesses, $1,589.25 for fees for copies, $118.20 for docket fees, and $638.55 for other costs. Bill of Costs at 1. Defendants never filed an objection to the bill of costs with the Court,[35] but the Court must determine for itself whether the costs sought are allowable, reasonable, and necessary. That said, Bellamy must be given a chance to respond to the adjustments that the Court has made. *Cf. Spellan*, 59 F.3d at 646 ("[B]ecause the reductions in question are the product of independent judicial scrutiny of the record, the district court must afford the plaintiffs an adequate opportunity to respond to the district court's critique of the submitted [fee] petition."). Bellamy may flag any such disagreement with the Court in a motion for reconsideration.

Bellamy is awarded the full $400.00 for fees of the clerk. This cost is statutorily allowable, 28 U.S.C. § 1920(1), reasonable and necessary. Under 28

---

[34]The Court has been careful to avoid impermissible double-counting—that is, reducing the lodestar for something that it has already reduced the hours billed for. *See Spellan*, 59 F.3d at 647. So, in deciding upon a 20% reduction, the Court considered the fact that it *already* reduced the time billed for certain issues and claims on which Bellamy did not prevail. But the Court finds that those reductions largely did not account for time spent on tasks that would have contributed in part, but not in whole, to Bellamy's success on the excessive force claim (for example, deposing the other defendant officers).

[35]The Rule 54.3(e) statement indicates that Defendant thinks that Bellamy "seeks reimbursement for several costs that have [been] disallowed by courts in this district," but does not identify which costs those are. *See* R. 156, Rule 54.3(e) Statement at 3.

U.S.C. § 1914(a), parties bringing civil suit are required to pay a filing fee of $350.00, and, effective May 1, 2013, the Judicial Conference Schedule of Fees has required parties filing civil suit to pay an additional $50.00, making the total civil filing fee $400.00. Bellamy paid this fee, R. 1.

Bellamy is also awarded $4,010.62 in transcript fees. Money spent to obtain a copy of a transcript is recoverable, 28 U.S.C. § 1920(2), so long as the transcript was "necessarily obtained" and the cost of the transcript did not exceed the "regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript … was filed." L.R. 54.1(b). The current regular copy rate, in effect since January 26, 2012, is $3.65 per page for original transcripts and $0.90 per page for copies. A prevailing party may also recover fees paid to the court reporter for his or her attendance, L.R. 54.1(b), but these fees cannot exceed $110.00 for a half day (four hours or less) and $220.00 for a full day. Here, Bellamy produced fourteen invoices to substantiate her claim for transcript costs. *See* Bill of Costs at 22-36. Review of those invoices reveals that Bellamy regularly paid more than is allowed in attendance fees.[36] *See id.* at 23 (charging $281.25 for a full day); *id.* at 24 (charging $165.00 for a half day); *id.* at 25 (charging $166.25 for a half day); *id.* at 26 (charging $187.50 for a half day); *id.* at 27 (charging $187.50 for a half day); *id.* at 28 (charging $156.25 for a half day); *id.* at 29 (charging $197.50 for a half day); *id.* at 30 (charging $125.00 for a half day). So, Bellamy's award has been reduced by

---

[36]Many of the transcript invoices do not specify the total number of pages or the per page rate charged. But since Defendants did not make an objection, thereby putting Bellamy on notice that she should supply further documentation, the Court will let the transcript charges stand.

$476.25, the amount she was charged in excess of the cap on attendance fees. Bellamy's award has further been reduced by $15.00, the amount that she was charged for the delivery of the Bellamy-Sanders and Kerr depositions. *See id.* at 33. "[C]osts associated with delivering, shipping, or handling transcripts are typically non-recoverable ordinary business expenses," *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 2016 WL 316865, at *3 (N.D. Ill. Jan. 26, 2016), and the Court will not allow Bellamy to recover the delivery fee here where there is no apparent special justification for having the transcripts delivered.

Bellamy's request for $1,031.70 for fees for service of summons and subpoena is granted. Although such costs are ordinarily recoverable, they cannot "exceed the marshal's fees, no matter who actually effected service." *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996). Here, Bellamy provided proper documentation, and where a fee for service exceeded the marshal's fee, Bellamy reduced the fee appropriately. *See* Bill of Costs at 3 n.1.

Bellamy is awarded $162.18 for witness fees. Under 28 U.S.C. § 1821, a witness attending federal court is entitled to a fee of $40.00 per day of attendance and is allowed mileage at a specified mileage rate. Bellamy has charged $45.00 per witness per day in attendance fees, so each of those charges is reduced by $5.00 (for a total reduction of $20.00). Bellamy did not provide documentation for the mileage charges, but they are so small as to be presumptively reasonable.

Bellamy's request for $1,589.25 in copying fees is granted. Copying costs are recoverable so long as the copies were necessarily obtained. 28 U.S.C. § 1920(4). To

prove that copies were necessarily obtained, a party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess*, 924 F.2d at 643. A party is, however, "required to provide the best breakdown obtainable from retained records." *Id.* Here, Bellamy has provided printing and copying reports to substantiate the copying fees. *See* Bill of Costs at 37-43. These reports do not say what was copied or who the copies were provided to, and most do not say what rate was charged. But again Defendants did not object, and the Court does not think it fair to deny Bellamy $1,589.25 in costs when she was not put on notice that she should provide additional substantiating documentation to the Court.

Bellamy's request for $118.20 in docket fees is also granted. Again, the documentation provided, *see* Bill of Costs at 44-50, would probably not have been sufficient had Defendants objected, but they did not and the Court is not willing to say that these fees were unreasonable without briefing.

Finally, Bellamy is allowed $38.58 in other costs. The costs to obtain Bellamy's medical records and the certified statement of disposition in Bellamy's criminal case are permitted. *See Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995) ("The papers included copies of medical records and pleadings. These costs are clearly allowable."); *Lawson v. Bethesda Lutheran Cmtys., Inc.*, 2012 WL 6727544, at *2 (N.D. Ind. Dec. 28, 2012) ("Under § 1920, [c]opying costs of medical records that are necessary for a case are allowable." (internal quotation marks omitted)). The private investigator fee, however, is not. As an initial matter, it is not

clear whether that kind of fee can be taxed, and even if it could, the fee pertains to Rule 404(b) work that the Court has found unreasonable, *see supra* Section III.B.4.

All told, Bellamy is awarded $7,350.50 in taxable costs (in accordance with the chart below).

| Expense: | Requested: | Granted: |
| --- | --- | --- |
| Fees of the Clerk | $400.00 | $400.00 |
| Fees for Service of Summons and Subpoena | $1031.70<br><br>(($65.00 x 15) + $6.70 + $50.00) | $1,031.70 |
| Fees for Transcripts | $4,501.87<br><br>($281.25 + $165.00 + $166.25 + $187.50 + $187.50 + $156.25 + $197.50 + $125.00 + $487.57 + $549.90 + $286.70 + $317.25 + $195.05 + $177.94 + $209.51 + $15.00 + $298.12 + $274.99 + $223.59) | $4,010.62<br><br>([$281.25 - $61.25] + [$165.00 - $55.00] + [$166.25 - $56.25] + [$187.50 - $77.50] + [$187.50 - $77.50] + [$156.25 - $46.25] + [$197.50 - $87.50] + [$125.00 - $15.00] + $487.57 + $549.90 + $286.70 + $317.25 + $195.05 + $177.94 + $209.51 + [$15.00 - $15.00] + $298.12 + $274.99 + $223.59) |
| Fees for Witnesses | $182.18<br><br>($46.48 + $45.79 + $45.00 + $45.00) | $162.18<br><br>([$46.48 - $5.00] + [$45.79 - $5.00] + [$45.00 - $5.00] + [$45.00 - $5.00]) |
| Fees for Copies | $1,589.25 | $1,589.25 |
| Docket Fees | $118.20 | $118.20 |
| Other Costs | $638.55<br><br>($29.55 + $9.00 + $600.00) | $38.55<br><br>($29.55 + $9.00 + [$600.00 - $600.00]) |
|  |  | Total Award:<br>$7,350.50 |

# IV. Conclusion

For the reasons stated above, Bellamy's fee petition, R. 157, is granted in part and denied in part. Bellamy is awarded $7,350.50 in taxable costs. She is also awarded attorneys' fees at a current rate of $465 an hour for Hamilton and Needham, $250 an hour for Uribe, $215 an hour for Turkcan, $150 an hour for Szymczak, and $125 an hour for paralegal work. The Court has made specific reductions to the hours billed and determined that the lodestar should be reduced across the board by 20%, but it cannot calculate the modified lodestar without knowing the total amount that each of Bellamy's attorneys devoted to exchanging emails. Defendants are directed to calculate the total time that each attorney spent drafting and reviewing emails, and then to provide those calculations (along with the identity of the objected-to entries) to Bellamy by September 8, 2017. The parties must then file a joint position paper with the Court by September 22, 2017 identifying any disagreement as to the calculation. The Court will then apply the email reduction to the hours billed, multiply those hours by hourly rates to calculate the lodestar, reduce that lodestar figure by 20%, and enter final judgment as to the amount of attorneys' fees due to Bellamy.

ENTERED:

     s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 25, 2017